JAMES MURPHY, Appellant, v. GEORGE N. WOLFE.—45 S. W. (2d) 1079.

Court en Banc, February 6, 1932.

*George J. Gove* and *Jacobs & Henderson* for appellant.

*John P. Peters* and *E. M. Zevely* for respondent.

RAGLAND, J.—This proceeding was commenced in the Probate Court of Osage County by appellant, as distributee, to compel respondent, as administrator, to inventory as assets of the estate of Bridget Wolfe, deceased, certain time deposits in bank made by the intestate in her lifetime and for which certificates had been issued. On an appeal from the probate court the cause was heard *de novo* in the circuit court, resulting in a judgment for the administrator. An appeal was taken to the Kansas City Court of Appeals and by that court transferred here on the ground that the amount in dispute exceeded $7,500.

There is no controversy as to the facts. Bridget Wolfe at the time of her death was the wife of respondent, George N. Wolfe. They were married in November, 1926, and she died in the early part of the year, 1929. At the time of their marriage she was a widow. Both were elderly. She had no children by her former marriage, and following her marriage to Wolfe she and her husband resided on his farm in Osage County.

On October 19, 1926, the Morrison Bank at Morrison, Missouri, issued to Bridget Wolfe two certificates for time deposits, one for $4173.45 and one for $6000; each recited that the sum therein

named was "payable to the order of herself in six or twelve months on the return of this certificate properly endorsed, with interest at four per cent per annum if left six months." On September 5, 1928, she appeared at the bank accompanied by her husband and told the cashier that she wanted the certificates so changed that the money represented by the deposits would be her husband's if she died first, that the survivor of them could draw the money. Thereupon she surrendered the certificates and the bank issued her two in lieu of them. One of them was for $4,399.10, being the principal of the $4173.45 certificate surrendered, with interest. This new certificate recited: "Bridget Wolfe has deposited in this bank the sum of $4399.10 payable to the order of herself in six or twelve months or G. N. Wolfe, her husband, on the return of this certificate properly endorsed. With four per cent interest if left six months." The other certificate was for $6,000; it recited: "Bridget Wolfe and G. N. Wolfe, has deposited in this bank the sum of $6000 payable to the order of herself in six or twelve months or G. N. Wolfe, her husband, on the return of this certificate properly endorsed, etc." On the same day, September 5, 1928, she made a third deposit of $100 and caused to be issued a certificate which contained the same recitals as the one for $4399.10. When the certificates were prepared they were handed to her by the cashier; she, in the presence of the cashier, gave them to her husband and told him to keep them. He put them in his deposit box in the Morrison Bank.

Prior to the transactions just chronicled, on May 25, 1928, a deposit of $200 was made in the People's Bank of Chamois for which was issued a certificate reciting that "G. N. Wolfe has deposited in this bank $200 payable to the order of himself on the return of this certificate properly endorsed six or twelve months after date with interest at four per cent per annum." This deposit was made up of $150 of Mrs. Wolfe's money and $50 of her husband's. Both were present at the time the deposit was made, but she conducted the transaction with the bank. The cashier gave the certificate, which had been prepared in accordance with her direction, to her and she handed it to her husband.

At the times above referred to Mrs. Wolfe was an intelligent woman and capable of managing her business affairs. There is no suggestion of fraud, coercion or undue influence.

Prior to the issuance of the certificates of date September 5, 1928, her husband had made deposits in bank of funds of his own and caused to be issued thereon certificates payable to either himself or his wife, or the survivor. She merely followed suit in having issued in the form they were the three certificates of the Morrison bank.

During her last illness Bridget Wolfe directed her husband to withdraw the funds represented by the $100 certificate; this he

did by endorsing the certificate and delivering it to the bank. The remaining certificates were in his possession at the time of her death. They represented deposits of what, with the exception of $50, had been Bridget Wolfe's money. As administrator of her estate he did not inventory them because he considered them his. He claims the funds payable under the certificates for $4399.10 and $6000, respectively, by right of survivorship; he claims those payable under the $200 certificate as a gift. The validity of these claims presents the issue for determination.

As an all-sufficient ground for the rejection of respondent's claims of ownership of the bank deposits in question, appellant interposes Section 7238, Revised Statutes 1919—Section 3003 of the present Revision. It provides that the personal property of the wife "shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband to sell, encumber or otherwise dispose of the same for his own use and benefit." Before considering the applicability of the statute to the transactions disclosed by the record, it may be well to determine what interest, if any, would have been acquired by respondent in the deposits made by Bridget Wolfe had there been no marital relation existing between them. And first as to the deposits made in the Morrison bank.

Section 11779, Revised Statutes 1919—Section 5400 of the Revision of 1929—provides:

"When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them."

As construed by this court in two recent cases the statute gives rise to a presumption that a deposit made within its purview becomes the property of the depositors as joint tenants, and, in the absence of competent evidence to the contrary, actually fixes the ownership of the fund in the persons named as joint tenants with the attendant right of survivorship. [Ambruster v. Ambruster, 326 Mo. 51, 31 S. W. (2d) 28; Mississippi Valley Trust Co. v. Smith, 320 Mo. 989, 9 S. W. (2d) 58.]

The deposits in question in this case, however, cannot be said to fall within the terms of the statute. It may very well be that

the depositor by the use of the words, "payable to herself or G. N. Wolfe," intended the deposits to be paid to either or the survivor of them, but they are not *"in form* to be paid to either, or the survivor of them." Hence, the statutory presumption just referred to does not arise from their use.

As there is no statutory presumption in the case to be reckoned with, the question as to the ownership of the deposits must be resolved on the proof touching Bridget Wolfe's intention in making them in the form she did. The burden was upon respondent to show by a preponderance of the evidence that the deposits were made with the intention of creating a joint tenancy therein between her and himself with the right of survivorship. [Corcoran v. Hotaling, 164 App. Div. (N. Y.) 75; Kennedy v. McMurray, 169 Cal. 287.]

In addition to the facts already noted, there was convincing oral testimony that for more than a year prior to the issuing of the certificates here in question Mrs. Wolfe had entertained the purpose of having the deposits changed and put in such form that they would become the property of her husband, if he survived her, and that her sole thought in surrendering her old certificates at the time she did and having new ones issued in lieu of them was to accomplish that purpose. We are of the opinion that respondent fully sustained the burden which rested upon him.

If the relation of husband and wife could be eliminated from consideration, there would be no question but that Bridget Wolfe, by making the deposits in the form she did with the intention of giving respondent a joint interest in the funds during their lives and the absolute ownership thereof if he outlived her, created a joint tenancy with the attendant right of survivorship. [Corcoran v. Hotaling, supra; Kennedy v. McMurray, supra; Trust Co. v. Reagan, 193 Mo. App. 290, 183 S. W. 1137.]

We come now to the real question in the case. Did the provisions of the Married Women's Act above quoted preclude Mrs. Wolfe from investing her husband with a joint interest in her bank deposits, with the right of survivorship, in the manner and by the method followed by her for that purpose? We think the question has heretofore been ruled by this court upon facts more or less analogous.

In Haguewood v. Britain, 273 Mo. 89, a wife's money, in 1910, was invested in land; the deed was taken to her and her husband, creating, on its face, an estate by the entireties. After her death, in 1912, her heirs sought to have a trust declared in their favor. The facts were that the wife had conducted and closed the negotiations for the property; consulted lawyers as to the best method of securing her husband in the enjoyment of the property in case of her own death; deliberately, after the matter was explained, chose to have the property conveyed as she did in preference to taking the whole

title and providing for her husband by will; then paid her money and accepted the deed in the form in which she had had her own attorney prepare it. In passing on the question of whether a trust arose under such circumstances, this court said:

"Appellants rely upon cases . . . holding that if the *husband,* with or without the wife's knowledge and consent, invests her money in realty and takes title, in whole or in part, in his own name, a trust arises in her favor. The doctrine of these cases is that the wife's money in the husband's hands is a trust fund and the property in which he invests it becomes trust property; . . . that the statute . . . renders nugatory her oral consent to her husband's use of her separate money and that her oral direction as to its use by him constitutes no nearer approach to compliance with the statute than does her *oral* consent. . . . Of these decisions those which present the husband as the sole actor or as attempting to shield himself behind the wife's wholly ineffectual *oral* consent to his use of her money, clearly have no application to the instant case, in which the wife was the sole actor and, after advising with her counsel, deliberately and independently chose the course she took."

In Larrick v. Heathman, 288 Mo. 370, husband and wife bought a tract of land, each contributing to the purchase price, and took a deed in their joint names in order that upon the death of one the survivor would have the full title. In considering whether a trust arose in favor of her heirs, to the extent of her contribution to the purchase money, it was said:

"It is clear to us that the intent of the two purchasers of the land involved was to create an estate by the entirety, and that they so contracted with the seller. In a case like this the intent is a vital matter. This evidence tends to show that Fannie was investing her own money, and not that her husband had gotten possession of it without her written consent, and was using it for his own benefit. That question, i. e. the use of the wife's money without her written consent, is not really in this case. Here we have husband and wife purchasing a farm (each putting money therein), and in the course of their contract of purchase directing the form of conveyance that they desired. These facts corroborate the deed, rather than tending to establish a resulting trust."

In the instant case the wife did not cause land purchased with her own means to be conveyed to herself and her husband jointly, so that it would go to the survivor, but she did deliberately deposit her funds in bank in such form as to create a joint interest therein in her husband, with the attendant right of survivorship.

In Craig v. Bradley, 153 Mo. App. 586, the Kansas City Court of Appeals held that if the husband takes the wife's separate money, without her consent, in writing, as provided by statute,

and invests it in notes or real estate, taking the deed or notes in the name of both, he does not hold by an estate in the entirety, but will be considered as a trustee for the amount of her money. But this rule does not prevent the wife performing the transaction herself so as to create such an estate. This holding was later followed by the same court in Yates v. Trust Company, 220 S. W. 692.

Under the Married Woman's Act a wife, with respect to owning, managing and disposing of her property, whether real or personal, is a *femme sole*, and being *sui juris*, may do with it as she pleases; the inhibition of the act which is invoked is directed against *a husband's* reducing his wife's personal property to his possession without her assent in writing. Such is the principle of decision in the cases just referred to. Bridget Wolfe could therefore have given her husband a joint interest with her in the funds which she deposited in bank, with the right of survivorship, by any method which clearly manifested such an intent on her part and which effectuated a completed gift. That the method employed by her did effect a completely executed gift finds clear exposition in Trust Co. v. Reagan, supra.

. The transaction had by Mrs. Wolfe with the bank at Chamois, wherein she deposited with that bank $150 of her own money together with $50 of her husband's, caused the bank to issue a certificate reciting that the whole sum had been deposited by her husband and was payable to his order and then delivered the certificate to him, constituted a completed gift of her part of the funds so deposited, unless her express assent in writing was necessary to effectuate the gift. If the question of whether such assent was necessary is not disposed of by what has already been said, it is set at rest by In re Guardianship of McMenamy, 307 Mo. 98, 130-133. In that case it was squarely held that a married woman can make a parol gift of her personal property to her husband. It is claimed by appellant, however, that what is said in the McMenamy case regarding a married woman's capacity to make a parol gift to her husband is *obiter;* if it is, it will be so no longer, for we adopt its conclusion in that respect and the reasoning by which such conclusion was reached as wholly applicable in this case.

The judgment of the circuit court should be, and is, affirmed. All concur.

PER CURIAM:—The foregoing opinion of RAGLAND, J., in Division One, is adopted as the opinion of the Court en Banc. All of the judges concur.