Mary S. DALTON, Plaintiff-Appellant,

v.

AMERICAN NATIONAL BANK, a Corporation, Defendant,

Bessie Opal and Mary S. Dalton, Executrices of the Will of Carl Hagan, Deceased, Interpleader-Defendants,

Addie Catherine Hagan, Intervener-Defendant-Respondent.

No. 46076.

Supreme Court of Missouri, Division No. 1.

Jan. 13, 1958.

Motion for Rehearing or to Transfer to Court en Banc Denied Feb. 10, 1958.

Ronald S. Reed, St. Joseph, for appellant.

Kranitz & Kranitz, St. Joseph, for respondent.

DALTON, Judge.

Action for a declaratory judgment as to the ownership of a $15,069.71 savings account on deposit in the American National Bank, a corporation, doing business in St. Joseph, Missouri. Plaintiff alleged that her brother, Carl Hagan, had for a long time prior to December 7, 1954, been the owner of the said savings account; that the said account was changed into a joint savings account with the plaintiff; that, thereafter, the account had stood in the name of plaintiff and her brother as a joint account payable to either with the right of survivorship; that her brother had died on July 7, 1955; and that plaintiff was the sole owner by the right of survivorship and entitled to withdraw the account from the defendant bank.

The action was instituted on November 2, 1955, against the defendant bank. The bank answered and offered to pay the account into court and moved that Bessie Opal and Mary S. Dalton, executrices of the last will of Carl Hagan, deceased, be made additional defendants. The motion was sustained and said defendants entered their appearance by William Orr Sawyers the attorney for said estate. An answer was filed on behalf of decedent's estate disclaiming any interest in the account and further alleging that the account "was at no time an asset of the estate of Carl Hagan, deceased, but was the sole property of plaintiff." The answer further alleged the detailed facts upon which the foregoing conclusion was based and the court was

requested to declare that "these executrices are not entitled to said bank account" and have been fully excused from including it in the inventory of the estate of Carl Hagan, deceased. Thereafter, by agreement of all the parties concerned, Addie Catherine Hagan was permitted to intervene and she was made an additional party defendant. She filed an answer admitting that "on or about the 7th of December 1954, and for a long time prior thereto, Carl Hagan, now deceased, was a depositor in the defendant bank and specifically was the owner" of said savings account, but denied most other allegations. Intervener is not mentioned in plaintiff's petition and her relationship to the deceased first appears from the closing paragraph of her answer wherein she says that the account was, at the time of his death, the sole property of Carl Hagan, deceased, "in which this defendant has right, title and interest as the surviving spouse of said deceased." Since the bank made no claim to the fund, the court ordered that the fund remain on deposit with defendant bank until the further order of the court. Thereafter, on request of intervener, the court ordered the issues submitted to a jury.

At the close of all the evidence the court overruled requests for directed verdicts by the respective parties, plaintiff and intervener. The cause was then submitted to a jury and a verdict returned that "the savings account in issue * * * is and at all times was the sole property of Carl Hagan, deceased, and * * * was not jointly the account of Carl Hagan, deceased, and plaintiff." Judgment was entered in conformity to the verdict. Plaintiff has appealed and contends the trial court erred in denying plaintiff's motion for a directed verdict in her favor at the close of all the evidence.

For many years prior to June 20, 1953, Carl Hagan and his then wife, Evelyn Hagan, had on deposit in defendant bank a joint savings account with the right of survivorship. Evelyn died June 20, 1953, and Carl Hagan became the sole owner of the account. Intervener testified that she was married to Carl Hagan on December 10, 1954. He died July 7, 1955. Mary S. Dalton and Bessie Opal are both sisters of the deceased. Intervener admitted that the savings account in question was represented by a passbook or savings account deposit book issued by defendant bank.

Plaintiff had identified and offered in evidence the original signature card of Carl Hagan dated January 4, 1922, in account No. 4533. The card shows the signature of Carl Hagan and the name of the account, to wit, "Mr. and Mrs. Carl Hagan," followed by the words: "Payable to either or the survivor, in case of death of either of said joint owners." Plaintiff also offered in evidence a similar card of the same form, date, number and terms and showing the signature, Mrs. Carl Hagan. Plaintiff further offered the ledger sheets in the same account showing transactions in the account from February 5, 1932, to and including December 1, 1949. The heading of the first page of the ledger account shows No. 4533, Mr. or Mrs. Carl Hagan, and also shows the words: "Payable to either, or the survivor, in case of the death of either of said joint owners." Thereafter, the bank apparently changed its bookkeeping system, since an additional ledger sheet in the same account has a different form. It showed the same account number and the names "Mr. or Mrs. Carl Hagan." This sheet had been amended by striking the words "or Mrs." and adding the words "Mary S. Dalton." There was oral testimony by the Bank's Vice-President and Cashier that the exhibit was a ledger sheet in the said account; that the added name was in the handwriting of the bank's teller in its Savings Department, Leonard Jirkovsky; and that Jirkovsky could perform "all of the duties pertaining to work in the savings department" of the defendant bank, including the making of changes on the passbook or ledger sheets. He said it was a part of Mr. Jirkovsky's duties to put the name "Mary S. Dalton" on the passbook, as written by Jirkovsky.

This ledger sheet covered the account from February 4, 1950 to December 1, 1956, and showed an increase in amount on deposit from $499.22 to $15,069.37, by a deposit, on June 13, 1955, in the sum of $14,570.15. The passbook for the account, showing entries after July 6, 1932, was also in evidence. The heading of the several pages of the passbook showed the same modifications in the same handwriting as the last ledger sheet of the account and, also, the additional word "sister", written after the added name, "Mary S. Dalton." The abbreviation "Dec." was written on each sheet where the words "or Mrs." were stricken out. The passbook also showed the words: "Payable to either or the survivor, in case of the death of either of said joint owners," and showed the same balance on June 1, 1955, the same deposit and the same balance June 13, 1955, as the ledger sheet previously introduced.

The Vice-President of defendant bank further testified that the name and word, "Mary S. Dalton, sister," were written in the passbook on June 13, 1955, "according to the rules of our bank." He did not know when the words "or Mrs." were stricken out. The stamp used to print words on the ledger sheet and on the passbook had not been in use for several years, since the bank's new signature cards now read "Payable to the survivor in case of death of one or the other." The passbook contained two pages of printed "Rules and Regulations." The stamped words were not put on the passbook between December 7, 1954 and June 13, 1955, but prior thereto, when the book was issued. On the outside cover of the passbook are the words: "No payments made unless this Book is presented at the counter." Each page of the passbook shows the same account number, No. 4533, and the name of the account, as amended.

A joint savings account card, dated June 13, 1955, was also in evidence, which the vice-president of defendant bank identified as bearing the number of this savings account, the amended name of the account and the signature, "Mary S. Dalton, sister." The signature on the card was further identified as showing the true signature of Mary S. Dalton. The witness said the card was incomplete, because not having the signature of Carl Hagan on this particular card, but the card carried at its top the statement "Joint account payable to either or survivor, or survivors." The card was a part of the bank's records of the account in question. The card also provided a form for an agreement establishing a joint account, with the right of survivorship, but the only signature appearing was that of Mary S. Dalton. The handwriting on the face of the card showing the words: " * * Carl Hagan or Mary S. Dalton * * * June 13, '55 * * * 2741 Seneca * * * Rt #4 * * * Savannah, Mo. * * * new card" was that of Leonard Jirkovsky and there was evidence that the making out of the card was within his duties. It was admitted on behalf of intervener that the mentioned signature cards were the only ones on file with the bank. No other passbook had been issued on account No. 4533, except the passbook in evidence.

On July 13, 1955, after the death of Carl Hagan, the defendant bank notified the Director of Revenue of the State of Missouri that the bank had in its possession and under its control the savings deposits in question standing in the name of "Mr. Carl Hagan and Mrs. Mary S. Dalton"; that Hagan was said to have died July 8, 1955; and that the bank intended to deliver and transfer the account to the "survivor" on July 25, 1955. There was oral testimony that the word "survivor" was taken from the signature card for this account signed by Mary S. Dalton. The letter to the Director of Revenue gave the date the account was opened, as 6/13/1955, and the relationship of the survivor as "sister." The letter was signed by the assistant cashier of defendant bank. The Department of Revenue acknowledged the notice on July 14, 1955, but no waiver was executed, since the major deposit was made shortly before Hagan's death. The passbook in question

574

was presented to the bank by Mrs. Dalton after Carl Hagan's death, but because of litigation and the absence of a waiver from the Department of Revenue, there was no transfer of the account to her.

There was evidence tending to show that it was the practice of defendant bank that, where a person had an account in their individual name or where there had been a joint account, they could come to the bank and make out a new signature card with the joint owner and the new name would be added to the present or existing passbook and to the bank's ledger sheet, as Mrs. Dalton's name was added in this case by an employee of the bank, but it wasn't the practice to permit a one-man account to be changed to a two-name account, with the right of survivorship, without having the card completed. That was not done in this case, nor was the passbook restamped. There was also evidence that the original signature card, signed by Carl Hagan, with the name Mr. or Mrs. Carl Hagan written at the top would indicate a joint account and the same was true for the other original signature card signed by Mrs. Carl Hagan on January 4, 1922, both cards showing the name and number of the account and the "old stamp at that time indicating a joint account." Mrs. Dalton made no withdrawals from the account between December 7, 1954 and June 13, 1955.

Leonard Jirkovsky, the Savings Department Teller of defendant bank, testified that he made the changes on the passbook and wrote out the face of the signature card signed by Mary S. Dalton, and dated June 13, 1955, also he made the entries in the passbook showing the figures $14,570.15 and $15,069.37 and made the changes on the heading of the ledger sheet, where the words "Mary S. Dalton" were added after the words "Mr. Carl Hagan." He said the date on the signature card, June 13, 1955, indicated the date when the account was made into a two name account. He wrote the deposit slip for the deposit made in said account on June 13, 1955, showing the name of Carl Hagan and a deposit in the

sum of $14,570.15 and showing the account number, No. 4533. In receiving deposits it was customary to use only the first name of a two-name account. All documents showed the same account number, No. 4533. The item $14,445.15 of the deposit was of a check payable to Carl Hagan and endorsed by him. The other item was of a check for $125 also payable to Carl Hagan and endorsed by him. Both endorsements were of Carl Hagan's signature. The ledger sheet reflected the same transaction as the passbook. According to Jirkovsky, the changes in the name of the account were first made on the passbook. According to the custom of the bank applicable "in this case, the book had to be presented by Carl Hagan in order to make it a two-name account." The ledger sheet would then be brought out and the book balanced. The signature cards would also be taken out and put on the teller's desk, so that all documents were out at one time. No changes would be made in the account without a signature card having been furnished. All changes to the passbook and the ledger sheet were made June 13, 1955, in his handwriting, at the same time the deposits were made, and the Mary S. Dalton signature card made out in a form for her signature. The witness said he did not strike out the words "or Mrs." in the passbook or write the letters "Dec." above them. He had no independent recollection of seeing Carl Hagan or Mary S. Dalton on June 13, 1955. After the death of the first Mrs. Carl Hagan and up to June 13, 1955, the account was a one-name account. To change it, the owner should have signed "a green card", for a joint account, but the record shows Hagan didn't do that. The change was made without such a card. Carl Hagan's prior signature card for a joint account with the right of survivorship, however, remained on file with the bank.

After the above evidence was offered, the plaintiff rested and intervener moved for a directed verdict. The motion, however, was overruled in order to permit plaintiff to offer additional evidence as to

the intent of Carl Hagan, since the trial court considered this to be the real issue in the case. See Princeton State Bank v. Wayman, Mo.App., 271 S.W.2d 600, 604; Murphy v. Wolfe, 329 Mo. 545, 45 S.W.2d 1079, 1081.

Thereafter, plaintiff Mary S. Dalton was called as a witness in her own behalf, but an objection was sustained on the ground that she was "an incompetent witness under the dead man's statute", Section 491.010 RSMo 1949, V.A.M.S., and she was excused from testifying. The testimony of Bessie Opal, a sister of Carl Hagan and of Mary S. Dalton tended to show that, in July and August 1954 and afterwards, Carl Hagan, who was then residing at the Dalton home, discussed his business affairs with his two said sisters and advised that he was going to put the account in the American National Bank into a joint account with his sister Mary S. Dalton. He said he wanted the transfer made so that "in case anything happened to him she would have the account." The passbook for this account was kept at the Dalton home where Carl had placed it in the first part of July 1954. The witness also said that Carl gave the passbook to his sister Mary, and that she put it away. The passbook was still at the Dalton residence in December 1954. The Daltons were then residing at 2741 Seneca Street in St. Joseph. At that time Carl said he was going on a trip to Colorado and on to California and he wanted to finish up his business affairs before he left; he wanted the passbook taken to the bank and entered as a joint account with his sister Mary. He said he might get married while he was away.

On December 7, 1954, Carl instructed witness Opal to write a letter for him to the defendant bank. She wrote it and it was signed by Carl the same afternoon. He had previously had a telephone conversation with the teller of defendant bank. She had listened to the conversation on an extension telephone. Carl told Leonard Jirkovsky that he was not able to come

down, but would send a letter to have the account made into a joint account. Jirkovsky agreed to do so. She said Jirkovsky recognized Carl's voice. After the letter was written and signed by Carl it was placed in the passbook. The next day witness Opal and plaintiff took the letter and passbook to the bank and presented both to Mr. Jirkovsky at the teller's cage in the savings department. Carl had left St. Joseph that morning and had gone west. He remarried while he was away. The letter to the bank stated in effect that "This is to verify our conversation of yesterday regarding my bank account and changing same to a joint account with my sister, Mary S. Dalton, and myself." On the same day, and while at the bank, Mary S. Dalton signed a signature card. Leonard Jirkovsky went to the file and got the record of the account and brought it out. He also took the passbook and put Mrs. Dalton's name on it. Mrs. Dalton asked Jirkovsky if it was necessary to have a new passbook and he said it was not necessary. Plaintiff returned the passbook to her home. Carl returned to St. Joseph on January 1, 1955.

On June 13, 1955, Carl obtained the passbook from plaintiff's home for the purpose of depositing money from the sale of his farm. He had the passbook in his possession for only a few hours and then returned it to plaintiff and she took it and put it in her vault. It was there at the time of Carl's death. The original letter addressed to the bank was delivered to the bank and no copy was retained. The bank had no record of the letter and did not produce it. On June 13, 1955, Carl was living at 2530 Pacific Street, his second wife's home in St. Joseph, but spent some time at 2741 Seneca Street, where his sisters were then living. Plaintiff offered no other evidence.

In her own behalf, intervener testified that she was married to Carl Hagan on December 10, 1954, in Garden City, Kansas; that she later resided with him at 2530 Pacific Street in St. Joseph; that she had left St. Joseph with Hagan on Decem-

ber 7, 1954, between the hours of 6 and 7 a.m.; and that, after their marriage at Garden City, she had gone with him to California.

Intervener also called Leonard Jirkovsky, who testified that he did not personally know Carl Hagan; that he had no recollection of ever having talked to him; that he would not have recognized Hagan's voice on the telephone; that he did not know Mary S. Dalton; that he did not talk to Carl Hagan at the legion post where Hagan was also reported to have seen him; and that he had no recollection as to whether he had talked to Hagan about changes in the account, or how he happened to write Mary S. Dalton's name on the passbook for the account in question. He had no independent recollection of making any of the changes that were in his handwriting. On cross-examination by plaintiff's counsel he was asked to explain what caused him to write the name Mary S. Dalton on the passbook for the account. He said: "With the request of the owner of the account * * * Carl Hagan." Intervener offered no other evidence.

The principal issue submitted to the jury by the court's instruction No. 2, was whether or not " * * * it was the intention of Carl Hagan to transfer to his sister, Mary S. Dalton, an interest as joint owner of said account No. 4533 with right of survivorship in either Carl Hagan or Mary S. Dalton * * *" The same issue clearly appears from intervener's requested, but refused, instructions "X" and "Y."

In the trial court Intervener contended that this account rightfully belonged to the estate of her late husband. Her counsel asked the jury to make a finding that Hagan never *intended* to make a joint account with his sister with the right of survivorship. Intervener's position was that no "joint account with the right of survivorship was intended." As respondent in this court, she admits that, "there is no issue of fraud in this case." She says that she does not "seek to establish any right,

title or ownership in herself to the bank account in controversy; rather she seeks only to preserve the assets of the estate of the deceased, Carl Hagan." She insists that "there was no actual joint tenancy created in the bank account." She says that "the mere change in the passbook as originally issued to 'Mr. or Mrs. Carl Hagan', by striking out the words 'or Mrs.', and inserting the name 'Mary S. Dalton, sister', without any other identification does not comply with the Deposit in Two Names Act (Section 362.470 RSMo 1949, V.A.M.S.) and is not in form to constitute an admitted indebtedness on the part of the bank to Mary S. Dalton or to establish her as sole owner of the account upon the death of Carl Hagan, where decedent did not sign the signature card * * *." She insists that the account was not " 'in form to be paid to either or the survivor of them' contemplated by the statute; that no presumption of joint ownership with the right of survivorship was therefore established;" and that, if any such presumption ever existed, it was rebutted by the cross-examination of plaintiff's witnesses. Her position is that, since Carl Hagan did not place his signature on the same signature card with Mary S. Dalton and, since no deposits or withdrawal had been made by plaintiff, Mary S. Dalton, "no joint account with right of survivorship was created as provided by statute and no consideration was shown for the making of such a joint account." She insists that, "where the statutory presumption is absent, the burden is upon plaintiff-appellant to show by a preponderance of the evidence that the deposits were made with the intention of creating a joint tenancy with the right of survivorship"; and that that burden was not sustained by plaintiff.

From a review of the evidence it has been noted that intervener-respondent offerred no affirmative evidence in support of her position that a joint account between Carl Hagan and his sister with the right of survivorship *was not intended by the deceased* and, accordingly in order to rule

appellant's assignment, we must review the entire record to determine whether an issue of fact was presented for a jury or whether the issue was one of law for the court.

The statute in question, Section 362.470 RSMo 1949, V.A.M.S. is as follows: "When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of the one to whom such payment is made shall be valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof."

Respondent says that "this section of the statute was enacted, not alone to protect banks in payment of joint deposits made in the manner prescribed therein but also to actually fix ownership of funds in persons named as joint tenants, provided the deposit *is made in form provided by said statute * * *"*, citing Melinik v. Meier, Mo.App., 124 S.W.2d 594; Murphy v. Wolfe, supra, and other cases. As stated, respondent insists that this account was not in form for the statute to apply, because Hagan did not sign the same signature card with his sister. In support of her contention that the account was not "in form to be paid to either, or the survivor of them", as contemplated by the statute, respondent cites Princeton State Bank v. Wayman, supra; and Murphy v. Wolfe, supra. The facts in those cases are materially different from the evidence in this case. We think that, in view of the documentary evidence and admitted facts in this case, it was unnecessary for Carl Hagan to sign the same signature card with his sister in order for the statute to apply.

Respondent rejected appellant's statement of facts and submitted her own statement in which certain admissions are made that may be considered in determining the issues on appeal. In answer to appellant's statement, "that the essential facts relating to this account are uncontradicted, can't be seriously disputed and raise little if anything in the way of factual issues for determination," the respondent stated: "It is true that in 1922 Carl Hagan and his first wife, Evelyn, established a joint savings deposit account with right of survivorship, in the American National Bank. * * * It is also true that they each signed signature cards showing the account to be a joint survivorship account, upon the basis of which the bank issued to them a passbook showing the account to be a joint survivorship account and the bank's ledger cards showed the account to be a joint survivorship account. It is true the account was given a number 4553 (sic) and that the passbook had printed on the back, the bank's rules and regulations governing the account, and that none of those records were ever changed, discarded or withdrawn; plaintiff's exhibits A to E, to the contrary notwithstanding. Exhibits A, B, C, and C–1 refer to the old account of Mr. or Mrs. Carl Hagan; exhibit D likewise refers to the old account of Mr. or Mrs. Carl Hagan on which it will be noted the words "or Mrs." have been marked out and the name of Mary S. Dalton inserted; exhibit E merely portrays the rules and regulations of the bank, the face of the passbook and the sheets all showing the account to have been in the name of Mr. or Mrs. Carl Hagan and thereafter the words "or Mrs." inked out, and the abbreviation 'Dec.' (intending to mean, undoubtedly, 'deceased',) written above it and then above that the name 'Mary S. Dalton, sister' inserted. Therefore, none of said exhibits were ever discarded or withdrawn and the

only changes made were those as above indicated. * * *.

"An 'essential fact' omitted * * * is that, according to exhibit G * * * a deposit was made by Carl Hagan of the major portion of said account to wit: $14,570.15 on June 13, 1955; that the signature card, exhibit F * * * was also signed by Mary S. Dalton, plaintiff-appellant on June 13, 1955, *yet at the time he made his deposit on said date he was not requested to and did not sign the signature card dated the same date as said deposit*, although plaintiff-appellant admittedly was at the bank and signed said card on the same date * * *. Nowhere does the record confirm the statement made by appellant * * * 'that the account was changed to a joint survivorship account between Carl and Mary at the request of Carl.'" (Italics ours).

In the cross-examination of Leonard Jirkovsky, after he had been called as a witness by intervener, we find the following: "Q. Referring to plaintiff's exhibit E, the passbook which you identified as your writing, can you explain what caused you to write that name 'Mary S. Dalton' on there? A. With the request of the owner of the account. Q. By that you mean whom? A. Carl Hagan." On the record presented, we consider it immaterial whether this oral testimony is binding on respondent or not.

In this case the documentary evidence shows that the account in question, No. 4533 was opened January 4, 1922. At that time Carl Hagan and his then wife, Evelyn, each signed separate signature cards, but each card showed the then name of the account, the number and the stamped words: "Payable to either, or the survivor, in case of the death of either of said joint owners." The first ledger sheet of the account after February 5, 1932, showed the same stamped words, as did the passbook issued for the account. On these facts, it is admitted that a joint savings account with right of survivorship was created.

Evelyn Hagan died June 20, 1953, and it is admitted that Carl Hagan, on December 7, 1954, and for a long time prior thereto was the owner of this account. The documentary evidence shows that, thereafter, on June 13, 1955, another signature card, bearing the same account number with the name of the account changed to Carl Hagan or Mary S. Dalton and showing the heading: "Joint account, payable to either, or survivor or survivors" was prepared by an officer of the bank and was then, or subsequently, signed by Mary S. Dalton and filed by the defendant bank as a part of its records of this account. On the day that this card was prepared and dated, an authorized employee of the defendant bank added the name Mary S. Dalton to the last ledger sheet of the account and the words "or Mrs." were stricken out then or later on the bank's record of the account. The passbook for the account, showing the account number and name of the account as Mr. or Mrs. Carl Hagan, with the stamped words below, "Payable to either, or the survivor, in case of the death of either", was amended in the handwriting of an agent of the bank, by adding the name "Mary S. Dalton, sister" in the style of the account. On the same date, it is admitted that Carl Hagan was present in the bank. The two endorsed checks, payable to Carl Hagan, one for $125 and one for $14,445.15, were in evidence and these checks were deposited in the defendant bank in the account in question, and an entry thereof was made in the said passbook.

While there was oral evidence that the passbook had been presented to the bank and the name of the account changed, as stated, on the written order of Carl Hagan on December 7, 1954, it is wholly immaterial to any essential issue in the case as to when the change was made, so long as it was made before or at the time of the deposit by Carl Hagan on June 13, 1955, and the entry in the passbook of the deposit made on that date. There is no evidence that the passbook was presented to the bank on that date, or subsequently, by any

person other than Carl Hagan, and there are no subsequent entries in the passbook. On the record presented, the deposit by Carl Hagan of said checks in said account and the entry of the deposit thereof on said date in said passbook, as amended on that date or prior thereto, showed an intention by Carl Hagan to have the deposit placed in the joint name account with the right of survivorship. The passbook in which deposit was entered still showed the words, "Payable to either, or the survivor, in case of death of either of said joint owners", as did Hagan's original signature card. At the same time or prior thereto the heading or name of the account had been amended, both on the passbook and on the bank's ledger sheet record of the account. The account was "in form to be paid to either, or the survivor of them."

Respondent does not question the construction of the statute in Melinik v. Meier, supra, 124 S.W.2d 594, 597, that "* * * under the plain language of the statute, a deposit made in the names of two persons, and in the form to be paid to either or the survivor, presumptively establishes joint ownership in the fund, with all the incidents attached to such ownership, including the attendant right of survivorship therein." And see Murphy v. Wolfe, supra.

The defendant bank recognized the account as a joint account with the right of survivorship as evidenced by its letter to the Department of Revenue. We think the documentary evidence and admitted facts clearly evidenced an intent by Carl Hagan to recognize the account in question as a joint savings account with his sister with the right of survivorship. His act in having the entry made in the passbook evidenced that intent. The facts shown were binding both on defendant bank and on Carl Hagan under whom respondent and decedent's estate must claim. In such situation, and in the absence of any evidence to the contrary, and there being no evidence in the record to rebut the presumption provided by the statute, the court should have directed a verdict for plaintiff.

The judgment is reversed and the cause remanded with directions to enter judgment that plaintiff-appellant is the owner of the account.

All concur.