348 S.W.2d 6 (1961)
In re ESTATE of R. Hadley PATTERSON, Deceased.
Willie Lee GOLDING, Respondent,
v.
Jack A. POWELL, Administrator Ad Litem, Appellant.
No. 48136.
Supreme Court of Missouri, Division No. 2.
July 10, 1961.
*7 Walker, Daniel, Clampett, Rittershouse & Ellis, Wayne T. Walker, B. H. Clampett, Springfield, for appellant.
Wear & Wear, Sam M. Wear, William A. Wear, Springfield, for respondent.
STOCKARD, Commissioner.
Upon the death of his mother, R. Hadley Patterson became the sole owner of a checking account in the Union National Bank, Springfield, Missouri, and of an account in each of two savings and loan associations. He was then in a rest home and was physically incapable of taking care of his business affairs. His cousin, Willie Lee (Mrs. Harold F.) Golding, was taking care of him and handling all of his business. Each executed and signed printed deposit agreements purporting to transfer each account to joint accounts in the name of Mr. Patterson and Mrs. Golding, payable to either or survivor. All the money in each joint account came from the accounts previously owned solely by Mr. Patterson.
About three months after the change was made in the ownership of the accounts, Mr. Patterson died. Mrs. Golding was appointed administratrix of his estate, and she listed in the inventory as an asset of the estate the sum on deposit in each account. Several weeks thereafter she showed the passbooks for the three accounts to the attorney for the estate, and he then learned for the first time that they purported to be joint accounts payable to either or survivor. Mrs. Golding then filed a petition to determine the ownership of the three accounts and alleged that it was "through mistake" that she had included them in the inventory of the assets of the estate. An administrator ad litem was appointed, and in his answer he alleged that by the execution of the deposit agreements there was no intention on the part of Mr. Patterson to transfer an interest in the accounts to Mrs. Golding but that the purpose was only to permit her to handle his business affairs, and also that the execution of the deposit agreements in the form in which they were signed was the result of undue influence on the part of Mrs. Golding who stood in a position of trust and a confidential relationship to Mr. Patterson.
The circuit court held that the three accounts were the sole property of Mrs. Golding. In a memorandum, not a part of the judgment, the circuit court stated that he had so held because "a number of Missouri authorities" (referring primarily to Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817) had ruled that absent fraud, mistake or mental incapacity, parol evidence is not admissible to contradict the terms of a deposit agreement executed by each depositor creating a joint account payable to either or survivor, but that if he were entitled to consider parol evidence of the intent of the depositors he "would hold that the execution of the joint signature card and deposit agreement was undoubtedly done under a mistaken apprehension of the legal effect thereof, and that the decedent never intended that the petitioner should, in effect, be his sole heir." The administrator ad litem has appealed.
Sections 362.470 and 369.150 RSMo 1959, V.A.M.S., pertaining to joint deposits in banks and joint accounts in savings and loan associations, provide, in effect, that when a deposit is made or account opened in the name of two or more persons, the deposit or account shall become the property of such persons as joint tenants with right of survivorship. The joint checking account was admittedly within the purview of *8 Section 362.470 and the joint accounts in the savings and loan associations were admittedly within the purview of Section 369.150. These statutes uniformly have been construed to give rise to a presumption that a deposit made within their purview becomes the property of the depositors as joint tenants, and, in the absence of competent evidence to the contrary, actually fix the ownership of the fund in the persons named as joint tenants, with the attendant right of survivorship. Murphy v. Wolfe, 329 Mo. 545, 45 S.W.2d 1079, 1081 (en banc). See also Mississippi Valley Trust Co. v. Smith, 320 Mo. 989, 9 S.W.2d 58; Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28, 77 A.L.R. 782; Bunker v. Fidelity Nat. Bank & Trust Co., 335 Mo. 305, 73 S.W.2d 242; Simon v. St. Louis Union Trust Co., 346 Mo. 146, 139 S.W.2d 1002; Weber v. Jones, 240 Mo.App. 914, 222 S.W.2d 957. In none of these cases does it appear that there was a formal written agreement between the depositors, or between the depositors and the bank, in which the respective rights of the parties were set forth, and in each case parol evidence of the surrounding circumstances was considered in determining the respective rights of the depositors as between each other. In this case Mr. Patterson and Mrs. Golding each signed deposit or account agreements whereby, in effect, they agreed with each other and with the bank or savings and loan association that the sums on deposit or in the accounts were owned by them as joint tenants with the right of survivorship.
Subsequent to the above cited cases, two cases came before this court which require special consideration. The first was In re Kaimann's Estate, 360 Mo. 544, 229 S.W.2d 527, 529, where a father and son opened a joint bank account, and in doing so each executed a written deposit agreement "to the effect that all deposits made by either * * * shall be owned by them jointly with the right of survivorship." We have determined from the files in the office of the clerk of this court that the exact wording of the deposit agreement in the Kaimann case was that the "undersigned joint depositors agree with each other and with [the bank] that all deposits heretofore or hereafter made by them or either of them with it to their credit as such joint depositors and all additions thereto shall be owned by them jointly with the right of survivorship and be subject to the order or receipt of either of them or the survivor of them and on the death of either all remaining shall be the sole absolute property of the survivor; * * *." At the death of the father the son claimed the balance of the account. The deposits had been made by the son, but the money so deposited belonged to the father. It was held that there was no evidence that the deposit agreement did not represent the real agreement of the parties, and that all such deposits made with the knowledge and consent of the father "establishes a presumption of joint ownership in the fund with all the incidents attached to such ownership, including the attendant rights of survivorship therein," and it was added that "the law is well settled to the effect that proof of a deposit made by one for the use of himself and another with the right of survivorship raises a presumption that the survivor takes absolute title upon the death of the other; but this presumption may be overcome by competent evidence tending to overcome such presumption." It was stated that any amount to which the son was entitled on account of survivorship would be in the nature of a gift from the father to his son, and after reviewing the circumstances whereby it was shown that there existed a confidential relationship between the father and son (because the son took care of the father's books and generally took care of his affairs), it was then held that when one bestows a gift upon another where the relation of trust or confidence exists, the gift "is presumptively void," and that the burden is upon the donee to rebut this by showing the fairness of the gift and its validity, which would include an intent on the part of the donor to make a gift, and also that the gift is entirely free from the taint of undue influence. The application of the *9 parol evidence rule to the written deposit agreement was not expressly considered.
The second case was Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817, 818. There Amos Crandall and Hattie Watts opened a joint account and each executed the same written agreement wherein it was stated that they "hereby agree each with the other and with [the trust company] that all sums heretofore or hereafter deposited by them, or either of them, with said Trust Company to their credit as joint depositors, shall be owned by them jointly with right of survivorship, and be subject to the check or order or receipt of either of them, or the survivor of them, and payment thereof shall discharge said Trust Company from liability to either, or the heirs, executors, administrator or assigns of either." All the money in the joint account was contributed by Crandall. The executor of his estate contended that the joint account was established for convenience purposes only and not to create or transfer any title to Hattie Watts, and she contended that the parol evidence rule prohibited the admission of evidence to contradict, vary, explain or show the intention of the parties to be other than that stated in the written agreement. The Kaimann case was distinguished on the ground that it "presented facts and issues not before us." It was then stated that the statute applicable to deposits in trust companies (comparable to the one applicable to banks) "fixes the interests of joint depositors as that of joint tenants and raises the `presumption of an intent to make an immediate gift,'" but that the "joint deposit agreement was a binding valid contract between the parties signatory thereto," and that it supplied all the formalities necessary to render the gift effective. It was then held that when an actual agreement is reflected in an unambiguous written contract, in the absence of fraud, duress, mistake or mental incapacity, "neither parol evidence nor extrinsic circumstances [is] admissible to contradict or vary the intention of the parties expressed in their solemn contract." In the Watts case there was no position of trust or confidential relationship between the parties to the agreement, and the effect of such a relationship and the resulting presumption referred to in the Kaimann case was not mentioned or discussed.
In the present case the circuit court based its ruling on the Watts case, and the parties on this appeal devote most of their briefs to it and its application. Appellant asserts it is wrong, and points out that the ruling there made concerning the application of the parol evidence rule was based primarily on Matthew v. Moncrief, 77 U.S. App.D.C. 221, 135 F.2d 645, 149 A.L.R. 856, and Illinois Trust & Savings Bank v. Van Vlack, 310 Ill. 185, 141 N.E. 546, both of which have been expressly overruled on that precise issue. See Murray v. Gadsden, 91 App.D.C. 38, 197 F.2d 194, 33 A.L.R.2d 554, and In re Schneider's Estate, 6 Ill.2d 180, 127 N.E.2d 445. See also Ottjes v. Littlejohn, Tex.Civ.App., 285 S.W.2d 243; Park v. McClemens, Ark., 334 S.W.2d 709; Idaho First Nat. Bank v. First Nat. Bank of Caldwell, 81 Idaho 285, 340 P.2d 1094; and Greener v. Greener, 116 Utah 571, 212 P.2d 194. However, whether or not the Watts case is wrong is not an issue necessary for decision in this appeal. There unquestionably existed a confidential relationship between Mr. Patterson and Mrs. Golding. He was in a rest home and was physically incapable of taking care of his affairs. She was looking after all his business interests, paying his bills, taking care of him generally, and handling his money. He unquestionably reposed trust and confidence in her judgment and in her integrity. See Jackson v. Tibbling, Mo.Sup., 310 S.W. 2d 909, 916; Hedrick v. Hedrick, 350 Mo. 716, 168 S.W.2d 69, 74; Walton v. Van Camp, Mo.Sup., 283 S.W.2d 493; Restatement of Restitution, § 182. We are of the opinion that this appeal is to be determined in accord with the principles and rules announced in the Kaimann case. It was not criticized in the Watts case but was distinguished on the ground that it presented "facts and issues not before us," and the position of trust and confidential relationship *10 is the only distinguishing feature of any consequence.
While there has been difficulty on the part of some courts in determining exactly how to classify a joint account or deposit with right of survivorship (see Kepner, The Joint and Survivorship Bank AccountA Concept Without a Name, 41 Cal.Law Rev. 596), it is generally, and we think properly, held to result in a gift on the part of the joint depositor who contributed the money to the other depositor, at least in the absence of clear, cogent and convincing evidence that a trust or some other disposition was intended. In re Kaimann's Estate, supra, 229 S.W.2d at page 530; 38 C.J.S. Gifts § 50. This is recognized in the Watts case where it was said that the written agreement in that case "is donative in nature and evidenced the intention of Crandall [the joint depositor who supplied the money] to make a gift in praesenti." 231 S.W.2d at page 820. The transfer of money to or the creation of a joint account is not necessarily a gift of the entire account or all of the money there on deposit, but it is a present donation of a partial interest in the form of a right to withdraw and the right of survivorship. See In re Schneider's Estate, supra; Murray v. Gadsden, supra, Industrial Trust Co. v. Scanlon, 26 R.I. 228, 58 A. 786; Burns v. Nolette, 83 N.H. 489, 144 A. 848, 67 A.L.R. 1051.
All of the money which went into the joint checking account and the joint savings and loan accounts was the sole property of Mr. Patterson. We conclude that such interest in the accounts, including that of the right of survivorship, which Mrs. Golding received by reason of the written deposit agreements was by way of a gift. When one bestows a gift upon another "`where the relation of trust or confidence exists, it is presumptively void and the burden is upon the donee to rebut this by showing the absolute fairness and validity [including intent] of the gift, and that it is entirely free from the taint of undue influence. This sound and wholesome doctrine applies as well to suits of law as to proceedings in equity, and is as broad in its scope as the existence of the confidential and fiduciary relation. The rule stands upon a general principle, applying to all the variety of relations in which dominion may be exercised by any one person over another.'" In re Kaimann's Estate, supra, 229 S.W.2d at page 530.
The burden of proof to sustain the gift was on Mrs. Golding. She was the moving party, and perhaps the written agreement alone would suffice to meet the burden arising from that fact. But the written agreement alone was not sufficient to overcome the presumption of invalidity of the gift resulting from the fact that the purported gift was made by Mr. Patterson to her while she was occupying a position of trust and confidence. The written agreement was evidence only of the fact that a gift presumably was made; not that it was a valid gift under the circumstances. There is no evidence in the record overcoming the presumption of invalidity.
We must and do hold that Mrs. Golding failed to sustain the burden of proof which rested upon her under the circumstances. However, because of the reliance by her and the trial court upon the Watts case, which we do not consider to be entirely unreasonable under the circumstances, we think she should be afforded the opportunity to develop the facts in view of the above announced principles. Therefore, the judgment is reversed and the cause remanded.
BOHLING, C., concurs.
BARRETT, C., concurs in result.
PER CURIAM.
The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.
All concur.