**Ida L. CRANFORD, Administratrix of the Estate of Thomas W. Cranford, Deceased, Plaintiff-Respondent,**

v.

**Evelyn LANGSTON, Defendant-Appellant.**

**No. 31016.**

St. Louis Court of Appeals.

Missouri.

April 17, 1962.

Robert A. Dempster, Jack O. Edwards, Sikeston, for appellant.

L. D. Joslyn, Joslyn & Joslyn, T. B. Russell, Charleston, for respondent.

BRADY, Commissioner.

This case was originally tried in the Probate Court of Mississippi County, and appealed therefrom to the circuit court of that county. A change of venue to the Cape Girardeau Court of Common Pleas brought this appeal within our territorial jurisdiction. The issue is between the respondent, widow of Thomas W. Cranford and administratrix of his estate, and the appellant, daughter of deceased by a former marriage, as to the ownership of a bank account deposited under the style, "Thomas W. Cranford or Evelyn Cranford." The trial court found for the administratrix.

Thomas W. Cranford was 84 years old when the circumstances pertinent here occurred. He was in bad health, had been in the hospital about nine months prior to the occasion in evidence, and was preparing to enter a hospital in Paducah, Kentucky, where the appellant lived, although he was not in fear of imminent death, and had stated that he would not be in the hospital long. The evidence was that the deceased had sold some property to his son, Ernest Cranford, the appellant's brother, and had

received cash in the amount of $3,000 in the transaction.

The testimony given by Mrs. Moss, assistant cashier of the bank in which this deposit was made, was that when the appellant and Ernest Cranford were talking in her presence about the deposit of this money,

"* * * Evelyn said that they put the money in her name because that it would be up to her to pay her dad's bills, she was going to place him in a hospital or a nursing home and it would be up to her to pay the bills and to put the money in the account jointly in her dad's name and her name so that she would be able to pay the bills for his medical expense and I gave her the signature card, set it up that way, Thomas W. Crandall or Evelyn Langston and I asked her at the time if her dad was capable of signing his name. She said he was, she took the signature card—they took the signature card, left and got it signed and brought it back to the bank and I gave them a check book and that was the end of the transaction."

This witness also testified that the appellant told the witness she wanted the account set up as a joint checking account so either could use it.

The respondent read into evidence certain interrogatories which the appellant answered, including the following:

"In answer to Interrogatory No. 4, the amount of funds in my possession, subject to certain checks issued but which have not cleared the bank, is the sum of $1982.60. I have paid out the following:

| "To Whom Paid | Date | Amount | Purpose |
| --- | --- | --- | --- |
| Lourdes Hospital | Sep. 25th | $171.15 | Hospital bill of my father. |
| Dr. S. L. French | Sep. 25th | 15.00 | Dr. bill of my father. |
| Dr. L. Myre | Sep. 25th | 15.00 | Dr. bill of my father. |
| McMikle Funeral Home | Sep. 26th | 496.17 | Funeral bill of my father. |
| Ernest Cranford for East Prairie Lumber Co. | Oct. 7th | 6.68 | Account of my father. |
| Dr. Robert Frazier | Oct. 7th | 68.00 | Dr. bill of my father. |
| St. Mary's Hospital | Oct. 7th | 93.30 | Hospital bill of my father. |
| Bell's Monument Co. | Oct. 7th | 115.00 | Monument for my father. |
| Mr. John Fletcher | Oct. 17th | 10.00 | Attorney fee for father. |
| Delta Hardware | Oct. 17th | .80 | Acct. of my father." |

The checks or photostats thereof were not offered in evidence but, referring again to the testimony of Mrs. Moss, it was shown that the check to Lourdes Hospital was signed by the appellant, so was the check to Dr. Myre, Mr. Fletcher, the one to St. Mary's Hospital, Dr. Frazier, Delta Hardware, the check to Bell's Monument Co. and the check to the funeral home. There was no testimony as to who signed the check to Dr. French, except the answer to the interrogatory as above set out wherein the appellant stated she had paid out this sum, nor does any check for $15 other than that to Dr. Myre appear on the bank's ledger sheet or the statement of account, both of which are in evidence here. However, a check for $21.50 does appear thereon, as does a deposit of $6.50, and subtracting these two sums leaves $15.00. It also appeared that these checks were all cleared by the bank after the death of appellant's father on September 25th. Their total is $991.10, and subtracting that sum from $3,000.00 leaves a balance of $2,008.90. This is the balance in the account as shown

on the original ledger sheet and on the statement of account, yet the appellant states she claims only $1,982.60. Since her intent to claim all that is in the account is clear, we must assume that the $26.30 difference is covered in a check referred to in evidence—although the amount thereof is not given—which Mr. Cranford wrote on this account prior to his death, but which has not cleared the bank.

Except for certain interrogatories in which the appellant stated her claim that this money was a gift, the appellant's evidence was the testimony of Ernest Cranford. He testified that after the deed transferring certain property to him had been signed by the deceased and the respondent, and their signatures notarized, Ernest took the notary back to her office and upon his return found his wife and the respondent and the appellant with his father. Ernest's testimony was that in the presence of those named above the deceased told him to "Take this money to the bank and put it in the bank in my name and Evelyn's name * * * and get this business over"; that he took the money to the bank where it was counted by the witness Madge Moss, assistant cashier of the First Bank of East Prairie, who gave Ernest a card, respondent's Exhibit 2, and told him, "Your father will have to sign this." His further testimony was that he took the card to his father who signed it in the presence of the respondent; that on this occasion the respondent stated, "I don't want any part of that. That belongs to Cranford and his kids. I don't want anything to do with that"; and that when his father signed the card, he told Ernest with respect to the money, "I want Evelyn to have this money because she did more than ery other child I've got has done for me." His testimony as to the conversation at the bank was opposed to that given by Mrs. Moss and was that when he took the card back to the bank the appellant asked him, "Why don't you leave this money here in your name?" and that he replied, "That ain't what Dad said, he said to put it in your name because he

wanted you to have it"; that the appellant said, "No, put it in your name" and that he replied, "I'm not going to do it, that's the way he told me to do it, put it in your name because I don't want anything to do with it"; and that appellant replied, "All right", whereupon he saw the appellant sign the card. It further appeared from Ernest's testimony that the deceased had once before his marriage, deeded the property Ernest bought to the appellant, who deeded it back to her father, and that this was all the property the deceased owned when he married the respondent; that the deceased had told him that he had enough property to take care of his hospital bill and was not worried about it; that the deceased had been ill for about a year and bedfast for two or three months prior to this occurrence; that the deceased told him that he was getting too nervous to write checks; and that when the money was deposited he took a bank book and the deposit slip to his father's home and gave them to the respondent, who said nothing about the way they were made out. Upon cross-examination, certain questions and answers from Ernest's deposition were read to him, and he admitted that upon deposition he had not said anything concerning the respondent's statement that she did not want this money.

The trial court entered its order finding that " * * * The money on deposit in the First Bank of East Prairie in the amount of One Thousand nine hundred and sixty-seven and 60/100 ($1,967.60) Dollars properly belongs to the estate of the said deceased." That court ordered the defendant to " * * * deliver the aforesaid money in the amounts of One Thousand nine hundred and sixty-seven and 60/100 ($1,967.60) Dollars to the administratrix * * *."

The appellant has briefed three points. She contends the trial court erred in awarding its judgment to respondent because the evidence established a valid inter vivos gift of this money to her; that the evidence established this deposit to be one of "joint tenancy with incident of survivorship";

and that the trial court erred in refusing to strike certain testimony from the record.

█ Due to the fact that the decision in this case rests in large measure upon disputed facts as related by the witnesses Moss and Ernest Cranford, we deem it necessary to repeat the already well known functions governing our review in cases of this nature. Under the provisions of Section 472.-250 RSMo 1959, V.A.M.S., the trial court heard this case de novo. Our duty upon review is the same as it is in causes of an equitable nature. The judgment is not to be set aside unless clearly erroneous, and we are to give due regard to the trial court's opportunity to judge the credibility of the witnesses, Section 510.310 RSMo 1959, V.A.M.S.

█ In support of her first allegation of error, the appellant states in her brief, "The undisputed evidence in the instant case is that the decedent intended to bestow upon the appellant a gift in the amount of $3,-000.00 * * * and gave the son the money for the purpose of transmitting the funds to the daughter, the appellant * * *. The evidence further established that the son did in fact turn the money over to the daughter while in the First Bank of East Prairie and that the son and daughter then deposited the money in said bank." At another place, the appellant urges "The delivery and acceptance of the above mentioned gift is shown by clear and convincing evidence * * *, not only by the testimony of Ernest Cranford, but by answers to interrogatories which were introduced in evidence by the respondent as part of the court record." With respect to the answers to Interrogatories 2 and 3 which appear herein, we cannot view these as clear and convincing evidence of such weight as to, in and of itself, sustain the appellant's contention. Insofar as the testimony of Ernest Cranford is concerned, that testimony is clearly conflicting with the testimony of Mrs. Moss regarding what the appellant told her in the presence of Ernest. It is also weakened by the fact that whereas Ernest contended the deceased had told him his other property was available to pay his expenses and he wanted appellant to have this money, the checks written on the account by appellant were all for her father's expenses or debts. When we add these factors to the admonition that we are to give due regard to the opportunity of the trial court to judge the credibility of the witnesses, Section 510.310, supra, and consider that both the probate court and the circuit court did not believe Ernest, we are faced with a situation where the sound rules of our review in such cases would be violated by the adoption of appellant's contentions with regard to a valid inter vivos gift.

█ Neither can we agree that the trial court erred with regard to appellant's contention that this record establishes that the bank deposit was one of joint tenancy with incident of survivorship. The appellant realistically concedes that this deposit is not such as to come within the presumption raised by Section 362.470 RSMo 1959, V.A.M.S., but urges that the evidence shows such was the intention, and so there was in fact a joint tenancy with the right of survivorship created. In reviewing the evidence as to this contention, it must be borne in mind that, as stated in Princeton State Bank v. Wayman, Mo.App., 271 S.W.2d 600 at loc. cit. [1], page 603:

"* * * But there being no statutory presumption, the burden was upon respondent to show by a preponderance of the evidence that the deposits were made with the intention of creating a joint tenancy therein between Coleman Wayman and herself with the right of survivorship."

A reading of that case, and of Murphy v. Wolfe, 329 Mo. 545, 45 S.W.2d 1079, will indicate the evidence and the various factors that led the courts therein to reach the conclusion that such indeed was the intention in those cases. But as indicated therein, it is a factual question. In the instant case, the only evidence upon which the ap-

pellant can rely to establish that she carried the burden of showing the intention to create a joint tenancy with right of survivorship was that given by Ernest Cranford. As we have heretofore said, we believe the credibility of this witness's testimony was put in issue by the testimony of the witness Moss, and under the circumstances here shown the relative weight of the testimony of either Mrs. Moss or Ernest Cranford was for the trial court before whom they testified. This record fails to show a situation where the decision of that tribunal was clearly erroneous and thus warrant our interference.

However, appellant urges that the testimony of Mrs. Moss is unreliable in view of the fact that the bank for which she worked cashed these checks written by appellant after the death of her father and thus treated the deposit as one with right of survivorship. We need not rule whether or not any action taken with regard to the deposit by the employer of the witness after Mr. Cranford's death could in any way constitute a showing of intention on the part of the deceased, or in any way bind the respondent. In any event this circumstance went only, as appellant tacitly admits by raising it, to the weight to be given to the testimony of Mrs. Moss. The trial court believed her testimony with respect to what was said as to how the appellant understood this deposit was intended to be made, and disbelieved Ernest. On the basis of this record we are not justified in holding that it was clearly erroneous to do so.

The last contention raised by appellant is without merit. The transcript does disclose that when Ernest Cranford was recalled by respondent he was, at first, confronted with an effort to impeach his testimony by reading from a deposition to which the appellant's counsel objected that it was not Ernest's deposition but was that taken of another person. However, the record also discloses that after the objection was made, respondent's counsel stated he was mistaken, and went on to read other questions and answers and to ask if Ernest had in fact so stated on deposition. Ernest answered that he had. No objection was made by appellant to these questions and answers. Not only was there no objection, but the answer made by Ernest shows clearly that this time respondent's counsel was in fact reading from Ernest's deposition.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

ANDERSON, P. J., WOLFE, J., and SAMUEL E. SEMPLE, Special Judge, concur.