GEORGE A. WEBER, RESPONDENT, v. LOUISE B. JONES, APPELLANT.—222 S. W. 2d 957.

Kansas City Court of Appeals. Opinion delivered June 13, 1949.

J. M. *Loomis* and *Hall DeWeese* for appellant.

*Henry I. Eager, George H. Gangwere* and *Blackmar, Newkirk, Eager, Swanson & Midgley* for respondent.

916

VANDEVENTER, J.—This is an action for a declaratory judgment. For clarity, we will refer to the parties to this appeal as plaintiff and defendant, the positions they occupied in the trial court. From an adverse verdict and judgment, defendant Louise B. Jones appeals. Plaintiff George H. Weber was Executor of the estate of his deceased sister, Anna C. Weber. The defendant, Louise B. Jones is a niece, her mother being Augusta Baehler, a sister of deceased.

The Safety Federal Savings and Loan Association, another defendant, was organized under the federal statute (12 USCA, Secs. 1416-1468) and was conducting a Savings and Loan business in Kansas City. On the 29th day of August, 1935, Anna C. Weber, the deceased, opened an account with the Savings and Loan Company. It was No. 4441 and was in the names of "Weber, Anna C. or Amanda M. or either of them or the survivor as joint tenants." Amanda M. Weber was her sister. On July 28, 1942, after Amanda M. Weber had died on May 11, 1942, at the request of Anna C. Weber, the account was changed to read "Weber, Anna C. or Weber, George or either of them or the survivor as joint tenants." This was done by drawing lines through the name "Amanda M." and typing in its place, "Weber, George." Also at the request of Anna C. Weber, the following notation was made on what might be called the ledger card or individual ledger sheet, "Treat as confidential—no information to George Weber. 7-27-42." At this time there was $337.30 in the account. On August 24, 1946 and while there was $3,360.10 in this account, this amount was withdrawn or cancelled by the Savings and Loan Association writing a check to Anna C. Weber in the sum of $3,360.10. A new account was at the same time opened in the names: "Anna C. Weber or Mrs. Louise B. Jones or either of them or the survivor as joint tenants." This account was numbered 18,878

and the first deposit therein was the check issued to Anna C. Weber in closing out account No. 4441.

At the death of Anna C. Weber, March 26, 1947, there was in this account $3,204.60. On the 4th day of April, 1947, George H. Weber was appointed executor of the estate of his sister, Anna C. Weber and on May 7, 1947, he filed this suit asking for a declaratory judgment, to determine the ownership of the funds remaining in the account.

In his petition he alleges that at the time of the death of Anna C. Weber, there was $3,204.60 in the account with the Savings & Loan Company, and asserts that Louise B. Jones claims to be the sole owner of that amount by virtue of being a joint tenant with the deceased. The petition then asserts there was in fact and in law no legal or equitable transfer of said money or deposit or interest therein to Louise B. Jones by Anna Weber in her lifetime or to be effective at her death and that such transfer was never intended to be made by her. That the said designation as a joint account was procured by the undue influence of Louise B. Jones over the mind of Anna C. Weber, that Mrs. Jones was a niece of the deceased and in a position of close confidential relationship and that this undue influence consisted of overpersuasion, coercion and improper influence to such an extent as to destroy the free agency and will power of Anna C. Weber. It was also alleged that at the time of the opening of the joint account with Louise Jones that Anna C. Weber did not have sufficient mental capacity to effect the transfer of said funds or any interest in them. (This allegation was abandoned at the trial and need not be further noticed.) Plaintiff prayed for a declaratory judgment determining the rights of the parties in and to the fund in question.

The Savings & Loan Association answered, admitting that it had the account of $3,204.60, that it was in the name of Anna C. Weber and Louise B. Jones as above stated and asked the court to determine to whom it belonged.

Louise B. Jones filed an answer claiming the money in account No. 18,878, asserting that she and Anna C. Weber jointly deposited the money in question, that said money and said account were the property of both of them and that upon the death of Anna C. Weber was the sole property of Louise B. Jones. Mental incapacity of Anna C. Weber was denied and it was also denied that defendant Jones exercised any undue influence over the mind of Anna C. Weber. Upon these issues, the case went to trial to a jury. Their verdict was for plaintiff, upon which the court rendered judgment. After unsuccessful motions to set the verdict and judgment entered thereon aside and for new trial, defendant, Louise B. Jones, appeals.

The statute relative to joint accounts in Building and Loan Associations is as follows:

"An association may issue membership certificates in the name of two or more persons, and in form to be paid to any one or more

of them, or the survivor or survivors of them. Such account, and any additions made thereto by any of them, shall become the property of such persons as joint tenants and shall be held for the exclusive use of the persons so named and may be paid to any person named therein, or the survivor or survivors of them. And such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said association, whether any one or more of the persons named be living or dead, for all payments so made by the association on such account prior to the acknowledgment of receipt by, or service by an officer empowered to make service of process upon, said association at its home office of notice in writing signed by any one of such joint tenants not to pay such account in accordance with the terms thereof. If there are more than two persons named in such membership certificate and one of such persons dies, the account represented by such certificate shall become the property of the survivors as joint tenants. Such a joint account shall create a single membership in an association."
(Sec. 8257.55 R. S. A. Mo. 1939, Laws of Mo. 1945, Page 1578, Sec. 56.)

No case has been cited construing this statute and we have found none, but similar statutes relating to banks and trust companies have been construed. (Secs. 7996 and 8070 R. S. Mo. 1939) The courts have held that while accounts opened according to the provisions of these statutes are presumptively joint accounts by which the successor takes as a joint tenant, that this is a rebuttable presumption and it may be shown that such was not the intention of the depositor or depositors. In re Geel's Estate (Mo. App.) 143 S. W. (2) 327. Ball v. Mercantile Trust Co. 297 S. W. 415, 220 Mo. App. 1165. Schnur v. Dunker (Mo. App.) 38 S. W. (2) 282. Melinik v. Meier, (Mo App.) 124 S. W. (2) 594. Mercantile Bank v. Haley, (Mo. App.) 179 S. W. (2) 916. Gordon v. Erickson, 356 Mo. 272, 201 S. W. (2) 404.

It is contended by defendant that the evidence was insufficient to support the verdict of the jury and that her motion for a directed verdict should have been sustained. This contention requires us to review the evidence in detail. In doing this, we should bear in mind that we must consider only that evidence most favorable to the plaintiff, drawing every reasonable inference therefrom in his favor, that we should consider only such of the defendant's evidence as tends to prove the plaintiff's case and disregard all evidence in favor of the defendant. Sollenberger v. Kansas City Pub. Serv. Co., 202 S. W. (2) 25, 356 Mo. 454. Smith v. Siedhoff, 209 S. W. (2) 233.

The evidence shows that some 12 or 13 years prior to her death, Anna C. Weber came to Kansas City to live with her sisters. That she did live with them, or some of them, until her death, which was March 26, 1947. That she had first opened an account with the Savings & Loan

Association in 1935 and this account was listed, "Weber, Anna C. or Amanda M. or either of them or the survivor as joint tenants." After Amanda Weber's death, she changed the account, substituting George Weber for Amanda. This was done so, in case of her death, sickness or other emergency, George Weber could draw checks on the account and obtain necessary funds. Anna Weber also instructed the Savings & Loan Association to treat this account as confidential and to give no information to George Weber. The account continued in this manner with occasional withdrawals and additions by Miss Anna until August 24, 1946. By that time Anna C. Weber was 85 years of age, almost totally deaf and blind, in fact so blind she could not see a Christmas display in the show window of a store, although standing against the glass.

On August 24, 1946, she was taken by defendant, Louise B. Jones, to the office of the Savings & Loan Association and Mrs. Jones informed Virginia Hill, an employee of the company, that she wanted to change the account so as to make it a joint account between her, Mrs. Jones, and Anna C. Weber. She said to Mrs. Hill, "If you will prepare the necessary form, I will have my Aunt sign it here." Mrs. Hill prepared the forms that were necessary and laid them down before Mrs. Jones. There were five of them for Anna to sign. During this time the blind and deaf Anna was engaged in a rambling conversation about her experiences in operating a hotel years before in Nebraska. The conversation between Mrs. Jones and Mrs. Hill had been in an ordinary tone of voice, which Miss Anna could not hear, she did not engage in the conversation, was not consulted and the evidence shows did not and could not have heard what was said by Mrs. Jones and Mrs. Hill. When the blanks were prepared, Mrs. Jones turned to her Aunt, who was still talking about the hotel, interrupted her conversation and said, "Sign these forms, Aunt Anna." Mrs. Hill testified, "She (Louise) put the pen in her hand and Miss Weber kept talking and Mrs. Jones had to shout at her to get her to sign and then she signed the forms." Miss Weber did not, and because of her defective eyesight, could not read either of the forms she signed and all the talking about the opening of the account and the execution of the forms was done by Mrs. Jones. Miss Anna appeared to take no interest in the proceedings. The application to open the new account, which was signed by Anna, and a photostatic copy of which is in the record, shows her signature not on the line but angling upward and extending into the printed matter on the card intended to be above the signature.

The evidence all shows that during the period in which Miss Anna had an account in the Savings & Loan Association from 1935 until her death, that she made all the deposits and withdrawals, had possession of the pass book and that the money deposited in the account was her money. She was also very frugal and "pinched her pennies."

On Jan. 2, 1947, Louise wanted $125.00 to defray expenses in visiting her son in the east and she borrowed it from Miss Anna, who went to the Savings & Loan Association and signed a note and made all the arrangements. This was while the account was in both their names. When the account was changed to include the name of Louise B. Jones, the money in the previous account, No. 4441, $3,360.10, was merely transferred to a new account No. 18,878, by the issuance of a check for that amount to Miss Anna, which, at the direction of Mrs. Jones, she endorsed and delivered to Mrs. Hill. The evidence further showed that Miss Anna kept her pass book, some jewelry, among which was one diamond ring valued at $350.00 and some other documents in a tin box in her room. ...

Mrs. Green, a sister of Anna, testified:

"Q. After the death of Miss Anna did you ever discuss with Louise the matter of the account in the Safety Savings and have any conversation as to whether she was claiming this money?

"A. She didn't come to the house only the following Saturday after Anna was buried, and she sat there and I missed Anna's watch. It was always on the table; she always had it on the table, and I said, 'Louise did you see Aunt Anna's watch?' She said, 'Yes, I have it. I have all her jewelry; I have all the money, and I don't have to pay a cent.' "

Mrs. Green further testified:

"A. She (Anna) said that she had money there and it wasn't to be touched; it was to be left there until she died, and she had a small account, a right small account, and in case anything happened, that my brother, as executor, could go and get some of that, but that money was never to be taken away until after she passed away, to pay her doctor bill, hospital bill and her funeral expenses, and she always told me, 'I have my money where they can go and get it if anything happens to me.' "

This was about a month before Anna's death. She told Mrs. Green that she had a will and her money was to pay funeral expenses, doctor bills, "and her will."

The evidence shows that for several months prior to her death and prior to the 24th of August, 1946, Mrs. Jones had become very friendly with Miss Anna. She would do things for her, would come to visit her frequently and they would go upstairs to Miss Anna's room and have long private conversations. During this period, the testimony also shows that Miss Anna developed a distant attitude towards her brothers and sisters.

The following letter, in the handwriting of the deceased, was introduced in evidence:

"Kansas City Mo. June 24/46

"June 26/46 -

"I have told Audey that I want Head Stones put up for Millie, Amanda, Lou, & My self of money out of the Estate, regardless of Survivorship. If Audey insists on survivorship I am cancelling the $500.00 which I have mentioned in my Will. Before taking any money in Cowherd's bank find out what all my expenses are: Pay all expenses such as Doctor bill funeral and a Etc. see. Then divide balance. Lou get one $500. bond and Louise gets one $500. Bond. George $500.00."

The Savings & Loan Association was sometimes referred to by Anna as Cowherd's Bank.

On the day of Miss Anna's death, Mrs. Jones immediately appeared at the house where Miss Anna had lived, went upstairs to her room and stayed for a considerable period of time. After this visit, the jewelry was never seen again and the next morning, "almost as soon as the office opened", Mrs. Jones was down at the Savings & Loan Office presented the pass book and demanded the money in the account, as the sole owner thereof. She stated that she wanted to close the account. This is the first time the evidence shows that Mrs. Jones ever had the pass book in her possession.

The officers of the Savings & Loan Association had learned of Miss Anna's death and had made a notation on the ledger card to that effect so that before the money was paid out, the association could obtain a waiver of any state inheritance taxes. It refused to pay the funds in the account to Mrs. Jones for that reason although she and her lawyer, who accompanied her, demanded payment. At this time there was $3,204.60 in the account. Shortly thereafter, the executor served notice on the Savings & Loan Association that he, as executor of Miss Anna's estate, was claiming the fund.

On January 8, 1946, Miss Anna had made a will in which she had, after requesting payment of funeral and other expenses, left her sister, Louisa E. Green $500.00, $500.00 each to her brothers, George and August Weber, $250.00 each to two great-nephews and to the defendant, Louise B. Jones $300.00. The residue was to be divided, with certain reservations, between Louisa Green, George and August Weber, and Robert and Wilson Green, who were great-nephews. George was appointed as Executor. The estate, as shown by the inventory, other than the Savings and Loan deposit amounted to $845.00 and the claims already filed amounted to $669.44.

From the foregoing evidence, we believe that reasonable minded persons could conclude that Anna C. Weber never intended that Louise B. Jones should be a joint tenant in this fund with right of survivorship but that she intended this arrangement to be a convenient and speedy method of paying her urgent bills and other expenses after her death, or while she might be incapacitated, by

permitting Louise B. Jones to draw from the account. The jury could also have reasonably found from the evidence that Anna did not fully comprehend the legal results of her act in signing the documents presented to her by Mrs. Jones when the account was changed, that her acquiescence was the result of undue influence, accentuated by the confidential relationship occupied by Mrs. Jones, and that said transfer was not the result of Miss Weber's own "independent will and agency." We think the jury's verdict was justified by the evidence and the court did not commit error in overruling the motion for a directed verdict.

Appellant further insists that the court committed error in giving instruction No. 1, which told the jury that if they found and believed from the evidence that on August 24, 1946, Anna Weber was the sole owner of money on deposit in the Safety Savings and Loan Association in the amount of $3,360.10 and that on that date there was placed on the records of the association the following designation of ownership, "Anna C. Weber or Mrs. Louise B. Jones or either of them or the survivor as joint tenants," and that there now remains in such account $3,269.00 and that such change was procured by defendant Jones in the exercise of such influence or persuasion over Anna Weber as to overcome her free will and agency and to cause her to do the will of said Louise B. Jones and that such change was made without the exercise of Anna's "own independent will and agency" or that Anna Weber did not intend to transfer to Louise B. Jones a joint interest and joint ownership in said money but intended to retain at all times thereafter or until her death complete ownership and control in herself or that Anna Weber intended only to give Louise B. Jones authority to draw and use the money or parts thereof for the benefit of Anna C. Weber or her estate in accordance with her instructions or will in the event of said Anna C. Weber's illness or decease, that their verdict should be in favor of plaintiff. It is insisted by appellant that this instruction was confusing and that the jury might have thought it related to, and their verdict must be on, account No. 4441 instead of account No. 18,878. We do not see how men and women of ordinary understanding could have been so misled. We must assume that the jury was made up of persons of ordinary intelligence and who had a reasonable knowledge and understanding of the English language Mueller v. Schien, 353 No. 180, 176 S. W. (2) 449. Elgin v. Kroger Baking Co., (Mo.) 206 S. W. (2) 501, 1. c. 508. It might have been clearer if the instruction had distinguished between the two accounts by number but in light of the evidence in this case, we fail to see how the jury could have been confused on the issues because of this instruction:

The appellant finally contends that the trial court committed error in refusing to permit her to testify. The record shows the following:

"Q. Now, Mrs. Jones, speak loudly enough so that all the members of the jury and the Court can hear you. State your name to the jury, please.

"A. Louise B. Jones.

"Q. Where do you live, Mrs. Jones?

MR. EAGER: Just a moment. At this point we object to any testimony from this witness because under the statute she is an incompetent witness; she is a party to this suit and she is a party to a transaction with the deceased person, the executor of the deceased person being the party opposing Mrs. Jones in this suit. For that reason, as I understand the law, she is entirely incompetent as a witness. We make that objection at this time.

THE COURT: She would be able to testify to events that happened subsequent to the appointment of the administrator.

MR. EAGER: It is my understanding, your Honor, that she is not competent to testify to anything in the lawsuit. I may be wrong but that is my understanding. I make that objection.

THE COURT: Well, I take it she is disqualified to testify to anything prior to the time of the appointment of the administrator.

MR. LOOMIS: What was the date of the administration? I wondered—maybe she won't have to testify to anything. Nothing involved here after April 4, 1947.

(Thereupon the following out of the hearing of the jury:)

MR. LOOMIS: As I understand the practice now; we don't have to make our exceptions to make our record.

THE COURT: No, unless you want to make an offer.

MR. LOOMIS: That is what I say; I don't believe it is necessary to preserve the record.

(Thereupon the following in the hearing of the jury:)

MR. LOOMIS: That is all.

THE COURT: Show the objection sustained."

This contention is based upon Section 1887 Mo. R. S. Anno. 1939. The material parts of this statute are as follows:

"No person shall be disqualified * * * *Provided*, (1) that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or is shown to the court to be insane, the other party to such contract or cause of action shall not be admitted to testify either in his own favor or in favor of any party to the action claiming under him, and no party to such suit or proceeding whose right of action or defense is derived to him from one who is, or if living would be, subject to the foregoing disqualification, shall be admitted to testify in his own favor, except as in this section is provided, (2) and where an executor or administrator is a party, the other party shall not be admitted to testify in his own favor, unless the contract in issue was origi-

nally made with a person who is living and competent to testify, except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator. * * *."

In support of her contentions, appellant has cited: Burgdorf et al. v. Keeven et al., 174 S. W. (2) 816. 351 Mo. 1003. Robertson Bros. v. Garrison Estate, (Mo. App.) 21 S. W. (2) 202. Jobe v. Buck et al., 224 Mo. App. 621, 31 S. W. (2) 98.

The first of these cases was decided squarely on the first part of Sec. 1887. The other two although in one an administratrix and in the other an executrix were parties, the cases were decided on the first clause in Section 1887. It will be noted that the clause referring to the executor or administrator plainly states that the other party shall not be admitted to testify in his own favor except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator. The courts have followed this plain mandate of the legislature. Kerr v. Prudential Insur. Co. of America, 38 Mo. App. 972, 194 S. W. (2) 706. Schwalbert v. Konert, 230 Mo. App. 811, 76 S. W. (2) 445. Davis v. Robb, (Mo. App.) 10 S. W. (2) 680. Weiermueller v. Scullin, 203 Mo. 466, 101 S. W. 1088 1. c. 1090. Pearce v. Hindman, (Mo. App.) 217 S. W. (2) 592. This rule has been criticized and termed arbitrary but any change must come from the legislature and not from the courts.

But, even if the rule were otherwise, there was no offer of proof, and we have no way of knowing what the court excluded or whether such exclusion was prejudicial. Under these circumstances, we cannot convict the trial court of error.

We must therefore rule against appellant on this assignment. Finding no error in the record, the judgment of the trial court should be affirmed. It is so ordered. WM. L. VANDEVENTER, J., sitting by order of the Supreme Court. *Dew, P. J.,* and *Cave, J.,* concur.