**Alice N. JENKINS and Drucilla B. Henderson, Appellants,**

**v.**

**Randall W. MEYER, Executor of the Estate of Amanda Berndt, Deceased, the Kemper State Bank of Boonville, Missouri, and the Evangelical Church of Boonville, Missouri, Respondents.**

**No. 50218.**

Supreme Court of Missouri,

Division No. 1.

July 13, 1964.

Orr, Sapp & Woods, Edwin C. Orr, Guy V. Head, Columbia, for appellants.

L. O. Schaumburg, Boonville, for respondent, Evangelical Church of Boonville.

John J. Stegner, Boonville, for respondent, Randall W. Meyer, as such Executor.

HOUSER, Commissioner.

Suit in equity by Alice N. Jenkins and Drucilla B. Henderson against Randall W. Meyer, Executor of the Estate of Amanda Berndt, Deceased, et al., to trace funds and impress a trust upon the proceeds of five certificates issued by a building and loan association and two banks. In two of the certificates Amanda or Drucilla were named as payees and in three of them Amanda or Alice were so named. Each plaintiff, claiming separately and independently of the other, sought to establish that she was a joint tenant with the right of survivorship as to the certificates in which she was named, entitled as such to the entire proceeds as the surviving joint tenant upon the death of the cotenant, Amanda Berndt. After an extended trial the chancellor found against plaintiffs on their theory of recovery and plaintiffs have appealed from the judgment rendered against them. We have jurisdiction because the total amount of the certificates in question, including interest to the date of judgment, exceeds the sum of $15,000. Berry v. Crouse, Mo.App., 370 S.W.2d 724, and case cited.

Amanda Berndt, spinster and seamstress, lived in a large house in Boonville, took in transient roomers, and by hard work, thrift and frugality accumulated nearly thirty-four thousand dollars. Randall W. Meyer was her business adviser. For many years Drucilla B. Henderson and her daughter, Alice N. Jenkins, for brevity's safe referred to as Drucilla and Alice, were friends and neighbors of Amanda. Drucilla and Alice operated a nursing home in Boonville. In July, 1959 Amanda, then

nearly 85 years of age, in failing health, sold her home and on August 7, 1959 moved into the nursing home, paying Drucilla and Alice $5,000 to care for and keep her for the rest of her life. In January, 1961 Amanda was adjudged a person of unsound mind and Mr. Meyer was appointed her guardian. Among her assets were numerous building and loan certificates and bank certificates of deposit payable to Amanda and various other persons. Acting under the order of the probate court the guardian had these certificates canceled and reissued in the name of his ward, Amanda Berndt, in form payable to her alone. Amanda died November 24, 1961 at the age of 87 years, leaving no known surviving relatives. Mr. Meyer was appointed executor of her estate.

Drucilla and Alice brought this suit against the executor, each seeking recovery on the following instruments in which one or the other of them had been named as a payee prior to the order of the probate court:

| Exhibit No. | Date | Issued by | Amount | Payable to |
|---|---|---|---|---|
| 3 | 7–14–1959 | The Boonville Building and Loan Association | 5,000 | Amanda Berndt or Drucilla B. Henderson or survivor |
| 4 | 7–15–1959 | The Boonville Building and Loan Association | 1,000 | Amanda Berndt-or-Alice Jenkins-or-survivor |
| 8 | 9–12–1960 | National Bank of Boonville | 5,000 | Amanda Berndt or Mrs. Alice N. Jenkins |
| 11 | 11– 9–1960 | Kemper State Bank | 3,900 | Amanda Berndt or Alice Jenkins, or either one of them, as joint tenants with right of survivorship and not as tenants in common |
| 12 | 11– 9–1960 | Kemper State Bank | 3,900 | Amanda Berndt or Drucilla B. Henderson, or either one of them, as joint tenants with right of survivorship and not as tenants in common |

———◆———

The Evangelical Church, sole legatee and distributee under the last will and testament of Amanda, was made a party defendant, along with the executor and the financial institutions involved.

Plaintiffs called defendant Mr. Meyer to the stand, and put him on as their witness. He testified to the following facts: He attended to Amanda's business during the latter years of her life—from the early 1950's—investing her money at her direction, as her business agent. From July 15, 1959 he acted under a power of attorney executed by Amanda. At the beginning, when Mr. Meyer first started looking after Amanda's affairs, she instructed him that her money was to be invested "in her name and with provisions for payment at her death. But during her lifetime, she was to have absolute control and ownership over it and receive the income from it." She wanted to control her certificates as long as she lived. She did in fact receive

the income and interest from all of the various investments made by Mr. Meyer for her, during her lifetime, no matter who else was named in the certificates as payee. All of the money invested by Mr. Meyer for Amanda was Amanda's own individual property; none of the funds invested in the certificates naming Drucilla or Alice were contributed by them. Amanda told Mr. Meyer that she wanted to give Drucilla and Alice some money; that she wanted Drucilla to have $5,000 at her death and wanted Alice to have $1,000 at her death. Acting upon Amanda's instructions, Mr. Meyer, secretary-treasurer of the association, caused the two building and loan investment certificates, Exhibits 3 and 4, to be issued. Later Amanda instructed Mr. Meyer to cause to be issued the two $3,900 bank certificates of deposit naming Drucilla in one and Alice in the other, Exhibits 11 and 12. Amanda also told Mr. Meyer that she wanted him to have $6,000 at her death and pursuant to her directions he had the association issue investment certificates totaling $6,000 payable to Amanda or Randall W. Meyer, Sr., or the survivor. With reference to all of Amanda's transactions with the building and loan association Mr. Meyer was instructed and given to understand that so long as she lived she was to have complete control over the deposits made in the building and loan association, and that she would expect to receive all the income therefrom. She did in fact receive all of the income from the building and loan investment certificates. The National Bank of Boonville certificate of deposit, Exhibit 8, was issued payable "to Amanda Berndt or Mrs. Alice N. Jenkins." Amanda had directed Mr. Meyer to have it made out in form payable "to Amanda Berndt or Mrs. Alice N. Jenkins, *or survivor.*" It was her intention to have the words "or survivor" added. Mr. Meyer so instructed the bank, and considered that it was so issued, but in fact and apparently by inadvertence of the bank clerk the words "or survivor" were not put in the certificate.

Once or twice Amanda asked Mr. Meyer for a statement as to what money she had and where and how it was invested. Pursuant to this request he made a typewritten statement, Exhibit 13, showing the contents of her safety deposit box, including a savings account passbook balance, the amount of cash therein, and listing all of her certificates of deposit and investment certificates, with the name of the financial institution, the amount, and the persons to whom they were payable. This writing, delivered to Amanda, was introduced in evidence at the trial by appellants. It listed, among others, the National Bank of Boonville certificate for $5,000, and stated that it was payable "to Amanda Berndt or Alice Jenkins or Survivor." It showed a bank balance of $7,770 in her savings account and it was this cash that was used to purchase the two $3,900 certificates of deposit, Amanda having told Mr. Meyer that she would like to close out that account and put it in time deposits "so that she would get the interest off of it." Appellants, who did not testify because of the Dead Man's Statute, urge that appellants must be taken to have known that they were named in these various certificates; that Exhibit 13 must have been given to them by Amanda, because appellants produced Exhibit 13 at the trial and it was not found by the executor among Amanda's effects. We do not consider that these facts justify the suggested inference, and we find no substantial evidence that appellants had any knowledge, prior to Amanda's death, of the existence of the certificates in question or that they were named as copayees.

There is no showing that a confidential relationship existed between Amanda and appellants. Although Amanda lived in appellants' rest home from August, 1959 and was physically incapacitated there is nothing to show that appellants assisted, advised or interfered with or were consulted in connection with any of Amanda's business affairs, or that Amanda reposed trust and confidence in appellants' business judgment and integrity, or that appellants

attempted to or did influence Amanda with reference to the issuance or the payees to be named in any of the certificates, or that appellants during Amanda's lifetime had in their possession any of the certificates, or attempted to exercise any control over the certificates or the funds represented thereby. It is conceded that neither of appellants received any income, interest or dividends from any of these certificates. No separate written contracts were entered into between Amanda and the banks or building and loan association, or with appellants.

The question is whether any or all of these certificates created joint tenancies, with right of survivorship, entitling Drucilla or Alice to claim the entire proceeds on the death of Amanda.

■ "An estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship * * *." 14 Am.Jur. Cotenancy, § 6; Longacre v. Knowles, Mo.Sup., 333 S.W.2d 67 [2]. The essential elements of a joint tenancy are: (1) the cotenants must have one and the same interest (unity of interest); (2) the interests must accrue by one and the same conveyance (unity of title); (3) the interests must commence at one and the same time (unity of time); and (4) the property must be held by one and the same undivided possession (unity of possession). 14 Am.Jur. Cotenancy, § 7; Longacre v. Knowles, Mo.Sup., 333 S.W.2d 67; Feltz v. Pavlik, Mo.App., 257 S.W.2d 214. "They hold per my et per tout or, in plain language, 'by the half and by the whole.'" Feltz v. Pavlik, supra, 257 S.W. 2d, l. c. 218.

■ The relationship created between the persons named in a joint deposit certificate depends primarily upon the intention of the depositor. 10 Am.Jur.2d Banks, § 369; 48 C.J.S. Joint Tenancy § 3 d; Longacre v. Knowles, supra.

Sections 362.470 and 369.150, V.A.M.S., relate to joint deposits in banks and savings and loan associations. Section 362.470, applicable to banks, provides in effect that when a deposit is made in the name of the depositor and another person and in form to be paid to either, or the survivor of them, such deposit and any additions thereto made by either of such persons, shall become the property of such persons as joint tenants and may be paid to either during the lifetime of both, or to the survivor after the death of one of them. Section 369.150 in effect provides that an account in a savings and loan association, issued in the name of two or more persons and in form to be paid to any one or more of them, or the survivor or survivors of them, and any additions thereto made by any of them, shall become the property of such persons as joint tenants; shall be held for their exclusive use, and may be paid to any person named therein, or the survivor or survivors of them.

■■ Sections 362.470 and 369.150 uniformly have been construed to give rise to a presumption that a deposit made within their purview becomes the property of the depositors as joint tenants, and, in the absence of competent evidence to the contrary, to actually fix the ownership of the fund in the persons named as joint tenants, with the attendant right of survivorship. In re Patterson's Estate, Mo.Sup., 348 S.W. 2d 6, and six Missouri cases cited, 1. c. 8. Being only a presumption it is subject to rebuttal and may be overcome by competent evidence that it was not the intention of the depositor to create a joint tenancy. Gordon v. Erickson, 356 Mo. 272, 201 S.W. 2d 404; Weber v. Jones, 240 Mo.App. 914, 222 S.W.2d 957; In re Geel's Estate, Mo. App., 143 S.W.2d 327; Ball v. Mercantile Trust Co., 220 Mo.App. 1165, 297 S.W. 415. Where the pertinent statute is not complied with, that is to say, where the

form of the certificate does not come within the purview of the statute, there is no presumption of joint tenancy and the survivor has the burden of proving that the deposit was made with the intention of creating a joint tenancy. Newcombe v. Farmer, Mo.App., 360 S.W.2d 272, and cases cited, l. c. 276; Princeton State Bank v. Wayman, Mo.App., 271 S.W.2d 600, 603; Murphy v. Wolfe, 329 Mo. 545, 45 S.W.2d 1079 [3].

A joint account or deposit with right of survivorship is generally held to constitute a *gift* on the part of the joint depositor who contributed the money to the other depositor,—a present donation of a partial interest in the form of a right to withdraw and the right of survivorship. In re Patterson's Estate, supra, 348 S.W.2d, l. c. 10, and authorities cited.

We will first consider whether Exhibit 8, the certificate in which the payees were named in the alternative—the certificate issued by the National Bank of Boonville, payable "to Amanda Berndt or Mrs. Alice N. Jenkins"—created a joint tenancy with right of survivorship. This certificate was not in form "to be paid to either, or the survivor of them" and therefore did not comply with § 362.470, V.A.M.S., a fact conceded by appellants in oral argument. Therefore the statutory presumption that a joint tenancy was created does not arise. See Murphy v. Wolfe, supra, 45 S.W.2d, l. c. 1081, in which the depositor used the words "payable to herself or G. N. Wolfe," and Princeton State Bank v. Wayman, supra, 271 S.W.2d, l. c. 603, in which the words "Coleman Wayman or Anna Wayman" were used.

No statutory presumption having arisen, the question of the ownership of the deposit must be resolved by resorting to proof of Amanda's intention in making the certificates in the form adopted. Murphy v. Wolfe, supra.

The conclusion that a joint tenancy was created does not arise from a consideration of the evidence of surrounding circumstances. One of the essential elements of a joint tenancy, unity of interest, is lacking. The rights of the payees in a bank certificate of deposit payable in the alternative to two payees the language of which does not invest "either, or the survivor of them" with the right to the proceeds, are not governed by the statute, but by common law principles. Such an instrument, payable to A or B, "does not indicate an intent to create a unity of interest, but on the contrary it indicates an intent that the interest of one is to be to the exclusion of the other, and there is not an equal right in both to share in the enjoyment of the property. [Citation.] As stated in Hemphill v. Jackson, Mo.App., 306 S.W.2d 610, 615, 'The word "or" is disjunctive in its very nature, and is incompatible with tenancy in common [or joint tenancy] because it infers one or the other, but not both.'" Longacre v. Knowles, supra, and authorities cited 333 S.W.2d, l. c. 70.

Appellants stress the fact that Amanda intended to create the right of survivorship. It is true that the leading and distinctive characteristic of an estate in joint tenancy, the right of survivorship, In re Gerling's Estate, Mo.Sup., 303 S.W.2d 915, is present in this case. The evidence shows that Amanda *intended* that this instrument be issued in form payable to Amanda or Alice or the survivor; that the bank was instructed by Amanda's agent to issue it in this form, and equity should consider as done that which ought to have been done. We further believe from the evidence that Amanda had donative intent; that she intended to make a gift to Alice. But this is not the alpha and omega of the matter. The decisive factor, fatal to appellants' contentions, is that the evidence conclusively shows that there was no completed gift; that the gift was not to take effect *in praesenti*, but only at the death of

Amanda. Amanda intended to retain the beneficial interest in the funds represented by the certificates of deposit during her lifetime and intended that Alice take only upon Amanda's death. A gift to take effect not during the donor's lifetime but at the donor's death is testamentary in character, Wahl v. Wahl, 357 Mo. 89, 206 S.W.2d 334; Trautz v. Lemp, 329 Mo. 580, 46 S.W.2d 135, creates no present interest, and cannot form the basis of a joint tenancy. There must be an intention on the part of the depositor to give the other named person a joint interest during his life. There was no intent on Amanda's part to give a present interest. That it was Amanda's intention that the gift take effect at her death is established by Amanda's declarations to Mr. Meyer that during her lifetime she was to have absolute ownership and control over the investments he made for her; that he was to invest her money "with provisions for payment at her death"; that she was to receive the income from it during her lifetime; and the lack of evidence that Alice had any knowledge of the existence of the certificate, or that Amanda intended to surrender or share control and ownership of the funds represented by the certificate with Alice during Amanda's lifetime. Appellants cite cases for the proposition that the reservation by the donor to himself during his lifetime of the earnings thereof will not invalidate a gift. In the cited cases the evidence clearly showed the making of a completed gift—the vesting of an immediate title in the donee; an element missing here. The issuance of Exhibit 8 under these facts did not create a joint tenancy with right of survivorship, or entitle Alice to the proceeds of this certificate on the theory of a gift.

Next, we consider Exhibits 3 and 4, issued by the building and loan association, one of them payable to Amanda or Drucilla or survivor, the other payable to Amanda or Alice or survivor. Appellants contend that certificates issued in this form comply with § 369.150, V.A.M.S.; that this creates a joint tenancy; that § 369.150 does not merely raise a rebuttable presumption but specifies the estate created, is binding upon the parties, and that evidence of intention is neither necessary nor proper; that the rights of the persons named in the certificate are fixed by the statute, "and that's it." We disagree. A building and loan certificate which complies with § 369.150 gives rise to a presumption of joint tenancy but, as in the case of joint bank deposits under § 362.470, the presumption is rebuttable by evidence of a contrary intention, which may be gathered from the surrounding circumstances. In re Patterson's Estate, Mo.Sup., 348 S.W.2d 6; Weber v. Jones, 240 Mo.App. 914, 222 S.W.2d 957. In addition to the general considerations stated above in connection with the National Bank of Boonville certificate, which pertain with equal force to the building and loan certificates, further evidence of Amanda's intention not to create a joint tenancy by way of an unconditional gift is to be found in her specific instructions with reference to the building and loan association that as long as she lived she was to have "complete control" over the deposits made therein and that she would expect to receive all of the income therefrom. In creating a joint account, which as we have seen is a present donation of a partial interest in the form of a right to withdraw and the right of survivorship, In re Patterson's Estate, supra, 348 S.W. 2d, l. c. 10, the donor does not surrender all control, in view of the joint nature of the rights of the parties; but there must be a surrender of a measure of control; there must be a sharing of control, perhaps best expressed as *a joint control of the account vested equally in the donor and donee*. Goldston v. Randolph, 293 Mass. 253, 199 N.E. 896. There is nothing in this case to show that appellants had any right whatever to exercise or share in the exercise of any control over the investment certificates during Amanda's lifetime.

Amanda did not relinquish sole control. She made no provision to share control. Her instructions reveal the contrary intent, namely, to reserve ownership and control, as well as the beneficial interest, in herself as long as she lived. Retention of full control by the donor creating the investment account is incompatible with the concept of joint control. Nearly sixty years ago this Court said that "the retention by the deceased of the actual possession of the certificate of deposit, with the expressed intention of reserving to himself the right to collect and retain the interest accruing thereon, negatives the claim of an unconditional gift." Harris Banking Co. v. Miller, 190 Mo. 640, 89 S.W. 629, 635, 1 L.R.A., N.S., 790. These circumstances, added to the fact that the donees were not to receive this property until Amanda died, prevent the creation of a joint tenancy in the building and loan certificates.

■ The gifts sought to be made in the National Bank of Boonville certificate of deposit and the building and loan certificates are void as an effort to make a testamentary disposition without complying with § 474.320, V.A.M.S. prescribing the formalities which must be observed in the execution of wills. Appellants therefore cannot recover on the theory of joint tenancy. Nor can they prevail on the theory of contract, 10 Am.Jur.2d Banks, § 386, or trust, Masterson v. Plummer, Mo.App., 343 S.W. 2d 352; 10 Am.Jur.2d Banks, § 384, because they did not proceed on these theories and for lack of evidence to support them.

■ Finally, what are appellants' rights under Exhibits 11 and 12, the two certificates of deposit issued by Kemper State Bank? One was payable to Amanda or Drucilla; the other was payable to Amanda or Alice; both contained this additional language: "or either of them, as joint tenants with right of survivorship and not as tenants in common." The circuit court ruled that as to these certificates appellants

are aided by the presumption of joint tenancy, under § 362.470, V.A.M.S., and that they evidence an intent to presently create a joint tenancy. Appellants were denied full recovery as survivors, however, the circuit court holding that the joint tenancy was severed and terminated by Amanda's adjudication as an incompetent and the subsequent actions of the probate court. The court allowed one half recovery on the theory that the severance of the joint tenancies created tenancies in common, as a result of which each of the appellants became the owner of an undivided one-half interest in the certificate in which she was named. Respondents took the position in the circuit court that no joint tenancy was created and that appellants were entitled to nothing, "not a thin dime," but they did not appeal from the judgment awarding appellants half the proceeds of these certificates. Respondents now say that "on the record and under the authorities * * * appellants were not entitled to any recovery, but, since respondents did not appeal, the judgment of the trial court (giving appellants half a loaf) must be affirmed." (Our parentheses.) On this appeal appellants contend that the court erred in not granting full recovery as survivors. Appellants contend that the holding of the court below finding a joint tenancy was "obviously correct" and that the statutory presumption "was not rebutted by other evidence." Appellants then undertake to establish the proposition that the appointment of a guardian and the subsequent actions of the probate court did not effect a severance or termination of the joint tenancy. Respondents join issue thereon but we do not reach the latter question. We agree with the circuit court that these two certificates in form comply with the joint deposit statute, § 362.470, V.A.M.S.; that appellants are aided by the statutory presumption, and that standing alone they evidence an intent to presently create a joint tenancy. We do not agree with appellants or the circuit court, however, that the presumption was not rebutted. We con-

**324**

sider that the presumption *was* overcome by other evidence. The circumstances indicating the intention of Amanda in the investment of her funds in these two certificates are no different from, but are the same as, the circumstances bearing on her intention with reference to the other three certificates, a fact admitted by counsel for appellants in oral argument. Except for the form of the certificates issued by Kemper State Bank there is nothing in the evidence to sustain appellants' burden of proving joint tenancy as to them; nothing to show any present intention to make a gift, or to relinquish sole ownership, control and beneficial interest in these funds, or to transfer to Drucilla or Alice an equal right with Amanda during her lifetime to share in the enjoyment of these funds. The evidence indicates the contrary: that these certificates, just like the others, were intended to be held by Amanda as her own, with the exclusive right to their ownership and control retained in herself during her lifetime, and that it was not intended that they become the property of the other payees until Amanda died. On this evidence we would be obliged to rule as an original proposition that no joint tenancy was created, and that appellants are entitled to nothing. That is not our prerogative, however, because respondents admit that not having appealed they have no right to complain of the judgment awarding appellants half the proceeds of these certificates and concede that we must affirm the judgment.

Accordingly, the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.