William S. TELLMANN,
Plaintiff-Appellant,

v.

CIVIL SERVICE COMMISSION OF ST.
LOUIS COUNTY et al.,
Defendants-Respondents,

and

St. Louis County, Missouri,
Intervenor-Defendant-Respondent.

No. 38691.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Jan. 10, 1978.

Motion for Rehearing and/or Transfer
Denied March 10, 1978.

Charles R. Oldham, St. Louis, for plaintiff-appellant.

Merle L. Silverstein, Clayton, for defendants-respondents.

Andrew J. Minardi, Associate County Counselor, Clayton, for intervenor-defendant-respondent.

STEPHAN, Judge.

This is an appeal from a judgment of the Circuit Court affirming a decision of the Civil Service Commission of St. Louis County. Appellant William D. Tellmann was a nonprobationary merit system employee of St. Louis County and operations manager of the division of data processing. His appointing authority was Robert J. Rollins, Director of the Department of Administration. While employed in the division of data processing during the fall of 1973, Tellmann formed the Tellmann Paper Stock Company for the purpose of supplementing his income by buying and selling scrap paper. His sources included his own division and various other St. Louis County offices which, prior thereto, had been throwing away scrap paper. In a conversation with the supervisor of building maintenance, Tellmann was told that he could simply take the paper without payment. Tellmann suggested that, in lieu of payment to the County, he make contributions to a Girl Scout troop. This practice was agreed to and followed.

In December of 1973, Tellmann's activities came to the attention of Mr. Rollins who, through Tellmann's immediate superior Kenneth L. Vaughn, directed that Tellmann should cease collecting the paper until procedures were established and approved by appropriate authorities. Thereafter, the practice was revised and Tellmann ceased picking up paper from data processing but continued to pick up paper at the probate court, the hospital and police department, paying for it by checks to the county treasurer. Tellmann was invited to submit a bid on the scrap paper generated by data processing. He did so, but was not the highest bidder. The contract for data processing scrap went to another company. The invitation to Tellmann came in the form of a letter dated February 20, 1974 from the director of purchasing which warned him that the contractual relationship could be a conflict of interest as proscribed by § 203.030 of the St. Louis County ordinances.

In May, 1974, Rollins became aware that Tellmann was continuing to buy scrap paper from the police department. After several conversations with the county counselor, Rollins determined the arrangement was a conflict of interest as defined by § 11.080 of the county charter and that, under the terms of that section, Tellmann's office was forfeited.[1] On May 10, 1974 Rollins so notified Tellmann by letter, and Tellmann was relieved of all duties as of that date.

Tellmann filed a petition for appeal to the Commission which held a hearing on the matter. In spite of a motion filed by Rol-

---

1. Pertinent portions of that section read as follows:

"1. No officer or employee of the county, whether elected or appointed, shall in any manner whatsoever be interested in or receive any benefit from the profits or emoluments of any contract, job, work or service for the county.
. . .
2. The provisions of this section shall be broadly construed and strictly enforced for the purpose of preventing officers and employees from securing any pecuniary advantages, however indirect, from their public associations, other than their compensation provided by law.
. . .
3. Any officer or employee of the county who willfully conceals any such interest or violates any of the provisions of this section shall forfeit his office. . . . The requirements and penalties of this section shall be in addition to all other provisions and penalties provided by law. . . .
4. This section shall be self-enforcing but the council may supplement its provisions and extend prohibitions against conflicts of interest by ordinance not inconsistent herewith."

lins as the appointing authority challenging the jurisdiction of the Commission, the Commission found that it had jurisdiction to hear the matter, found that Tellmann benefited from the purchase of waste paper from the county and that he had continued to do business with county agencies after being directed to cease such purchases. The Commission directed that Tellmann should be reprimanded but that he should be restored to his position as of the date of its decision, July 26, 1974, with a loss of salary from May 10 to that date.

Tellmann then filed a petition for review against the Civil Service Commission in the Circuit Court of St. Louis County, in which the County was allowed to intervene as a defendant. The trial court reviewed the case in accordance with Chapter 536 RSMo, ruled that the Commission had jurisdiction to hear the appeal, and found that there was competent and substantial evidence on the whole record to support the Commission's decision. Tellmann appeals, asserting that the declaration of forfeiture by Rollins constituted a denial of due process and is, therefore, a nullity. He further contends that the Civil Service Commission does not have the authority to adjudicate the validity of a forfeiture because a forfeiture is not a disciplinary action.

The Civil Service Commission briefed only the question of whether it had jurisdiction to adjudicate an appeal such as that filed by Tellmann.[2] Although the County did not appeal from the judgment of the trial court, the County advances the contentions that under the charter Tellmann's position could properly be declared forfeited without a hearing, and that the Commission did not have jurisdiction to entertain an appeal from such a declaration of forfeiture. The County argues alternatively that, if the Commission had jurisdiction to adjudicate the matter, there was competent and substantial evidence to support its findings. The County also asserts that it was error on the part of the Commission to

impose only a reprimand and loss of back pay since the only permissible punishment for conflict of interest under the charter is forfeiture of office.

■ With respect to whether the Commission was authorized to hear Tellmann's appeal, we believe that whatever label is affixed to the proceeding before the Commission, Tellmann was entitled, at some point, to a determination before an impartial tribunal as to whether he had been guilty of a conflict of interest as charged in Mr. Rollins' letter of May 10, 1974 and as proscribed by § 11.080 of the county charter. This is true whether the issue is examined from the constitutional viewpoint of procedural due process, *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) or from the aspect of practical and orderly implementation. In *State ex inf. Norman v. Ellis*, 325 Mo. 154, 28 S.W.2d 363 (banc 1930) the court, in holding that a constitutional provision providing for forfeiture of public office for nepotism was self-executing, acknowledged the necessity for a mechanism of implementation. There the court noted at page 366:

"Section 13 pronounces a forfeiture upon the commission of the act condemned. If anything more is required, section 3, article 6, of the Constitution, invests the Supreme Court with power to issue writs of habeas corpus, mandamus, quo warranto, etc. There a method is provided in the Constitution for removal of an officer who has forfeited his office under section 13, . . ."

What then is the proper method here? Appellant contends that it is the procedure contemplated by § 106.220 et seq. RSMo 1969 which provides, as pertinent here, that a person appointed to a county office who fails to devote his time to the performance of his duties, or who willfully or fraudulently fails or refuses to perform any of his

---

2. The Commission claims such jurisdiction on the strength of Article VII, § 7.030(3) which authorizes the Commission to "Hear appeals as provided by ordinance in case of disciplinary actions by appointing authorities, and from decisions of the personnel director in cases involving examinations and examination ratings; . . . "

duties shall forfeit his office. The forfeiture is, under the terms of those sections, sought in circuit court and prosecuted by the prosecuting attorney or the attorney general.

■ Without determining whether Tellmann is a county officer or whether the acts with which he was charged fall within the proscriptions of § 106.220, suffice it to say that the method of removal provided by the sections in question does not preclude the use of other methods. *State ex inf. Roberts v. Buckley*, 533 S.W.2d 551, 553 (Mo. banc 1976); *State ex inf. Danforth v. Orton*, 465 S.W.2d 618 (Mo. banc 1971). Moreover, it was held long ago that enactment by the General Assembly of removal procedures similar to those contemplated by § 106.220 et seq. does not preempt removal procedures set forth in a city charter. *State ex rel. Heimburger v. Wells*, 210 Mo. 601, 109 S.W. 758, 763 (1908). *Cf. State ex rel. Mincke v. Sartorius*, 231 Mo.App. 807, 95 S.W.2d 873 (1936) and *State ex rel. Davis v. Peters*, 94 S.W.2d 930 (Mo.App.1936).

■ Both the appellant and the County contend that the Commission erred in treating Tellmann's appeal to that body as a review of a disciplinary action. We may note that forfeiture of office is the ultimate measure of *discipline* which could be administratively imposed upon appellant and that, therefore, the case was correctly so treated by the Commission. The County argues that Article VII of the charter, which establishes the merit system and the Civil Service Commission, is a body of law separate from § 11.080, which prohibits certain activities by officers and employees and provides penalties for violations of those prohibitions. We do not believe that the charter was meant by its drafters to be carved up into its constituent articles and sections, each to be read and interpreted separately.

That the charter was meant to be read as one organic instrument is apparent on its face. For example, § 11.080 itself presupposes interaction among and action by various agencies of the governmental structure created by the charter: it authorizes the council to permit stock ownership by county employees in widely owned corporations do-ing business with the county or, in certain instances, to do business directly with the county; it provides for legal action against anyone offering or paying any form of compensation to any county employee in connection with any county business, which necessarily involves action by the legal officers referred to in Article V; it authorizes the council or the supervisor to declare void any contract made in violation of the section; and, although the section is "self-enforcing", it authorizes the council to supplement its provisions by ordinance.

As the section does not direct whether the prosecuting attorney or the county counselor shall carry out the authorized legal actions, this question would have to be answered by reference to Article V and implementing ordinances. Similarly, the failure of the section to spell out methods of enforcing its forfeiture provisions requires reference to Article VII which relates to personnel practices, implementing ordinances and rules, all within the various strictures of due process, including the right to a hearing.

■ Given the facts of this case and particularly Mr. Rollins' unilateral determination on May 10, 1974, that Tellmann had engaged in activities that required forfeiture of his office, we are of the opinion that the Civil Service Commission properly accorded Tellmann a hearing under the power granted to it by § 7.030(3) to hear appeals as provided by ordinance.

The implementing ordinance, § 202.180, permits the Commission to promulgate rules, *inter alia* :

"For the hearing by the Commission of any appeal from an employee who is dismissed or demoted after completing his probationary period of service, or who is suspended for more than thirty days in any one year. Both the appealing employee and the appointing authority whose action is reviewed shall have the right to be heard publicly. At such hearings technical rules of evidence shall not apply. If the Commission finds that the action appealed from was taken for any political, religious or racial reason, or any other reason not based on the employee's

lack of merit or ability, the employee shall be reinstated to his former position or a position of like status and pay, and may be reimbursed for any loss of pay resulting from the action appealed from."

Rule XVII, § 4, promulgated by the Commission, sets forth grounds for suspension or dismissal, and one of them is that the employee "has violated any of the provisions of Section 11.080 of the Charter relating to conflict of interest; . . . "

Section 6 of the Rule provides in part: "No employee who has permanent status shall be dismissed from his position except for cause. The employee and the Director, within seven calendar days after the effective date of dismissal, shall be furnished with a statement in writing setting forth the reasons for the dismissal, effective date of dismissal, and any other appropriate information. Within ten calendar days from the date of the mailing to him by registered mail at his last known address or serving upon him personally such notice of dismissal, an employee who is so dismissed may reply, as a matter of public record, to the charges in writing, and may demand during this period, a public hearing before the Commission."

The Commission obviously believes that it may hold hearings to determine whether a violation of § 11.080 has occurred, and we are thus supported in our view of the charter by such administrative interpretation. *L & R Distributing, Inc. v. Missouri Department of Revenue,* 529 S.W.2d 375, 378–379 (Mo.1975). However, as previously indicated, if a hearing were not otherwise provided for, it would be mandated by principles of due process.

Thus we can, with qualification, accept appellant's contention that the Commission's review of the case was directed toward the question of whether the action of the appointing authority in removing an employee with recognized merit and ability was justified, the qualification being that proof of a conflict of interest in violation of

§ 11.080 establishes an absence of "merit". The issue before the Commission was whether Tellmann violated that section by engaging in the activities set forth in Mr. Rollins' letter of May 10, 1974. Appellant does not challenge the trial court's ruling that the Commission's decision was based on competent and substantial evidence and, indeed, could not reasonably do so.

The County did not appeal the ruling of the trial court that the Civil Service Commission had jurisdiction to hear Tellmann's appeal nor the affirmance by the trial court of the Commission's disposition of the matter. Rule 84.13(b) provides in part, "No appellate court shall reverse any judgment, unless it finds that error was committed by the trial court against the *appellant* . . ." (Emphasis added.) Thus, the principal issue here is whether error adversely affecting Tellmann was committed. In this connection, see *Grimes v. Armstrong,* 304 S.W.2d 793 (Mo.1957) which was a suit, *inter alia,* to try title to real estate. One defendant counterclaimed in ejectment. Judgment was entered for defendants on plaintiffs' petition, but the counterclaim was dismissed upon the trial court's finding that defendant had failed to show plaintiffs were in possession of the land in question. Concerning the disposition of the counterclaim, the Supreme Court said at page 800, "Defendant has not appealed, and we may not review that ruling." Similarly, in *Jenkins v. Meyer,* 380 S.W.2d 315, 323–324[17] (Mo.1964) the trial court had awarded half the value of certain certificates of deposit to the appellants on the theory that appellants were tenants in common with the purchaser of the certificates. Respondents argued that appellants were entitled to nothing; and, although the Supreme Court expressed its agreement with the respondents' position, the Court affirmed because respondents had not appealed.[3] See also *Wagner v. Wagner,* 465 S.W.2d 655, 657[1] (Mo.App.1971); *King v. King,* 382 S.W.2d 819, 820[1] (Mo.App.1964); and *Red–E–Gas Company v. Meadows,* 360 S.W.2d 236, 237 (Mo.App.1962). It may well be that the

---

**3.** *Jenkins* was later overruled on other grounds. *In re Estate of LaGarce,* 487 S.W.2d 493, 500–501 (Mo. banc 1972).

sanction that *should* have been imposed by the Civil Service Commission was forfeiture and nothing less. *State ex inf. Norman v. Ellis,* 325 Mo. 154, 28 S.W.2d 363 (banc 1930). However, the point is not properly before this court, and the failure to preserve it prevents its review.

 That the penalty imposed amounted to a suspension without pay for a period of some eleven weeks rather than forfeiture of office, if an error, is one of which appellant cannot be heard to complain. In this respect, appellant's position is analogous to that of a defendant in a criminal case who receives less than the minimum sentence for the crime of which he is convicted, *State v. Ridge,* 204 S.W.2d 747 (Mo.1947), or a defendant in a civil action who contends that the award of damages to plaintiff was inadequate. *Swiss-American Importing Company v. Variety Food Products Company,* 471 S.W.2d 688, 691 (Mo.App.1971). The error, if any, was in appellant's favor.

The judgment is affirmed.

STEWART, P. J., and REINHARD, J., concur.