ANDERSON, P. J., WOLFE, J., and JOHN C. CASEY, Special Judge, concur.

John A. YOUNG, Sr., Administrator of the Estate of Flo Young, Deceased, Appellant,

v.

Frank KNELL, Administrator of the Estate of Maude L. Baer, Deceased, and Farm and Home Savings Association, a corporation, Respondents.

No. 24651.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 4, 1967.

Application for Transfer Denied
Feb. 12, 1968.

Don W. Kennedy, Kennedy & Tindel, Nevada, for appellant.

James A. Dunn, Carthage, for respondents Frank Knell, Administrator, Estate of Maude L. Baer, deceased.

J. MORGAN DONELSON, Special Judge.

This declaratory judgment action was brought to determine the ownership of an account in the Farm and Home Savings Association of Nevada, Missouri, hereinafter referred to as the Association, and of a life insurance policy issued by the Equitable Life Assurance Society of the United State. Prior to trial, however, the life policy issued on the life of Flo Young, in the amount of one thousand ($1,000.00) dollars was delivered to the named beneficiary, Maude L. Baer, defendant and respondent herein. The proceeds thereof were subsequently paid to her. Plaintiff dismissed his action as to the insurance company. This issue is no longer a part of the case and will only be considered as it may reflect upon the issue of the ownership of the disputed account for ten thousand ($10,000.00) dollars plus interest. The claimants to the account are Plaintiff John A. Young, Sr., the administrator of the estate of Flo Young, deceased, hereinafter referred to as appellant, and Maude Baer, the named surviving co-owner. The trial court rendered judgment for Mrs. Baer. We have jurisdiction because the total amount in question, including interest to date of judgment does not exceed $15,000.00. Article 5, Sections 3 and 13, Constitution of Missouri, 1945, V.A.M.S.; Section 477.040, V.A.M.S., as amended, Laws of 1959; Berry v. Crouse, Mo.App., 370 S.W.2d 724.

Flo Young, a spinster, and her mother Ella F. Young, lived together in Nevada, Missouri, until the death of the mother in 1948. Miss Young thereafter lived alone at the same address until her unexpected death on December 29, 1964, at almost 74 years of age. The only immediate surviving members of her family were her sister, Bessie Jones, Bronaugh, Missouri, and her brother, John A. Young, Sr., Raytown, Missouri, who is the appellant herein.

Upon a search of Miss Young's home the appellant and his wife found in her bedroom a locked trunk containing a passbook for the disputed account, the insurance policy above mentioned, her social security card, the deed to her property, and other papers. Letters of Administration were granted to John A. Young, Sr. on the estate of Flo Young, deceased, on January 4, 1965, and the account above mentioned and the insurance policy were inventoried as a part of her estate. These items were retained by the appellant and his attorney. Maude Baer was not notified of the death of Miss Young or of the location and retention of the passbook or insurance policy until appellant's attorney's visit on October 16, 1965.

After the death of Miss Young's mother in 1948 the relationship between Miss Young and her family became quite strained and was characterized as bitter. She wanted nothing to do with her family. There was no contact of any kind between them for over 15 years. Appellant and his wife testified, however, that in 1963 and 1964 they did visit her 3 or 4 times, and that the relationship between them improved. Appellant's wife described Flo Young as a very frugal person who never threw away anything, and she never discussed her business with people.

At the time of the death of Miss Young's mother there were two certificates in the name of Flo Young or Ella F. Young, or survivor, issued by the Farm and Home Savings Association. On March 10, 1951, on the application of Flo Young, the sur-

vivor, the certificates were cancelled and a new account opened and a passbook issued in the names of "Miss Flo Young and Mrs. Maude Baer, or either or survivor." The initial investment account was in the amount of $1435.00, which was the amount of the two original certificates issued to Flo Young and her mother, Ella F. Young. Other deposits to this account were made as follows: July 1, 1957, $1565.00; January 3, 1958, $100.00; December 31, 1958, $900.00; April 30, 1959, $2790.00; May 26, 1959, $2780.00; July 6, 1959, $200.00; and January 6, 1960, $230.00, for a total of $10,000.00. No deposits were made thereafter. It was conceded that Maude Baer contributed no funds to this account. No withdrawals were ever made, either by Miss Young or Mrs. Baer.

Miss L. F. Bridges, assistant secretary and an employee for 55 years of the Association, testified that only *one* passbook was issued regardless of the number of names listed on the account and passbook. No withdrawals could be made without the passbook, but deposits could be made without it. The records of the Association showed that no withdrawals were made, and the passbook had been presented to the Association each time a deposit had been made. Only one address was required for their records, and only the address of Flo Young was shown on the account, passbook and dividend checks. The dividend checks were issued semi-annually in the name of Miss Flo Young and Mrs. Maude Baer or either or survivor. All dividend checks were endorsed by Miss Flo Young only. The endorsement of either Miss Young or Mrs. Baer would have been honored by the Association. Later, when federal rules and regulations required the listing of social security numbers for all accounts by the Association, an application was mailed to Flo Young at her home address in Nevada, Missouri, which was subsequently returned with the social security number of Miss Young. This number was shown on the records of the Association and furnished to the appropriate governmental agencies. Here again the Association required only one social security number for each account regardless of how many names were listed on ie account. No separate application for her social security number was mailed to Mrs. Baer, and she was neither requested nor required to furnish her address to the Association. Miss Bridges stated that she had seen Miss Young in the Association offices from time to time, but Miss Young always handled transactions directly with the cashier, and not with her. She did not know Mrs. Baer and she did not have any knowledge that Mrs. Baer had been in the Association offices during this period. Burton Hoffman, cashier for 14 years of the Association handled some of the deposits for Miss Young when she came to the Association offices, but he did not handle all transactions for her. Miss Young had the passbook with her when he assisted her. Helen Margaret Warren, assistant cashier and an employee of the Association for 20 years, knew Miss Young and lived near her. She had cashed some of the dividend checks for her, but Miss Young's favorite employee was Fenton Cleveland, now deceased, who also handled the original application in 1951. She could not say whether Mrs. Baer had been in the Association offices or not, or whether Miss Young had the passbook while in the Association offices. It was stipulated that Maude Baer never received any interest checks on the account, but that they were collected and appropriated by Miss Young. It was further agreed that Flo Young was the owner of the life policy heretofore mentioned on February 26, 1951, which was the date she changed beneficiary of said policy from her mother to Maude Baer, and only a few days before the investment account was established.

Maude Baer and her husband formerly lived in Nevada, Missouri, but about fifteen years prior to trial date they had moved to Carthage, Missouri. Mrs. Baer was a chum, good friend for forty years of Miss Young. Since she had moved to Carthage she had

continued some contact with her friend in Nevada.

On October 16, 1965, before this action was filed on December 2, 1965, appellant's attorney contacted Mrs. Baer at her home in Carthage. He testified that the purpose of his trip to her home was to determine whether or not she had any interest in the account or whether he would claim it for the estate. He questioned and talked to her about the account and her relationship with Miss Young for forty-five minutes to an hour or longer. A typewritten questionnaire consisting of fifteen questions, prepared by him was submitted to Mrs. Baer at that time. The answers to the first five questions were in the handwriting of the attorney, and the balance of the answers and statements were in that of the defendant. He described in detail on direct and under vigorous cross-examination, the circumstances under which it was prepared, answered and executed. He further stated that they visited and talked about the questions and answers, but he did not explain the questions or define any of the words used for Mrs. Baer. The exhibit was offered and admitted into evidence as an admission. It is as follows:

"QUESTIONNAIRE REGARDING JOINT SAVINGS AND LOAN ACCOUNT

1) Name of association: Farm & Home Savings Association

2) Name of deceased co-owner: Flo Young

3) Name(s) and address(es) of surviving co-owners:

> Maude Baer
> 1145 South Maple, Carthage, Mo.

4) Date of death of decedent: Dec. 29, 1964.

5) Name of administrator of decedent's estate: John A. Young, Sr.

> (Following questions to be answered by surviving co-owner)

6) State if you were acquainted with the decedent, and the nature of your acquaintance? Yes good friends.

7) Did the decedent ever tell you of this account? Yes

8) Did you learn of it otherwise during her lifetime? No

9) If answer to (8) is 'yes', state how you learned of it and when.

> Flo told me about it years ago she did not how much it was. This was before we moved to Carthage—1955

10) Did you ever at any time have the passbook in your possession? No

11) If answer to (10) is 'yes', explain.

12) Did you ever deposit any of your own money in the account? No

13) If answer to (12) is 'yes', explain.

14) Did you ever see the passbook during decedent's lifetime? No.

15) When did you first learn of the existence of the account, and how?

> Flo told me. I never heard of it any more till Mr. Keenedy told me.

> Signed this _16_ day of _Oct._ , 1965.

> _Maude L. Baer_

Flo told me she wanted me to have this when she was gone. I never got any interest." — Surviving Co-Owner

The defendant also was permitted to explain the circumstances under which the exhibit was obtained and to explain her answers thereto. She stated that her husband had died only about two months before the attorney's visit, that she was nervous and sick from this as well as excited over the "deal", that she had never seen nor known him before this date, and that he was not there at her invitation or request. She further stated that she did not understand all the words or the questions themselves. She did admit that she neither asked nor received any explanations. She further testified that some of the answers and information given were incorrect. Defendant's attorney then asked the court's permission to ask Mrs. Baer questions to enlarge upon the answers given. Appellant objected to such further testimony under the dead man's statute, which was sustained. On cross-examination by appellant Mrs. Baer subsequently testified in regard to the exhibit as follows:

"Q. On 9, you say 'Flo—', here is the question, it says, 'If the answer to (8) is "yes", state how you learned of it and when.' You said, 'Flo told me about it years ago'? A. Yeah.

Q. Is that correct? A. Yes, sir.

Q. She did not say how much it was? A. No, not then she didn't. Later on she did.

Q. 'This was before we moved to Carthage—1955.' A. That's right. * * * and then,

Q. Is that answer correct? A. Flo told me about it years ago. She did not know how much it was but she did later on, she told me it was ten thousand dollars.

Q. This was before you moved to Carthage? A. Yes, that's right.

Q. The next question was 'Did you ever at any time have the passbook in your possession?' A. I said 'No', but I did have, I did have it.

Q. You did write 'No' down there? A. Yes, I had it."

■ The answers to appellant's questions were received without objection or request that any portion be stricken. It is obvious that appellant proceeded to elicit on cross-examination incompetent evidence in addition to Mrs. Baer's version of what was said and done when she answered and executed the exhibit or questionnaire or in explanation of her answers. This was done even though the court had sustained on direct examination appellant's objection that Mrs. Baer was an incompetent witness to testify as to any conversation, transactions, or other surrounding circumstances taking place between her and Miss Young. We can not say that the trial court committed error in receiving and considering this evidence under the state of the record. In Re Reichelt's Estate, Mo.App., 179 S.W.2d 119; Mason v. Mason, Mo., 231 S.W. 971; Section 491.010 RSMo 1959, V.A.M.S. It is too well established to require citation that the weight given to this evidence is for the trial court.

■ Accounts of this type are governed by Section 369.150, V.A.M.S. It provides, in effect, that an account in a savings and loan association established in the name of two or more persons and payable, together with any deposits thereto, to any one or more of them or the survivor or survivors of them, shall become the property of such persons as joint tenants. It also shall be held for their use, and may be paid to any person named therein, or the survivor or survivors of them. The statute gives rise to a presumption that an account made within its purview becomes the property of those named as joint tenants with rights of survivorship, and in the absence of competent, contrary evidence actually fixes ownership. Jenkins v. Meyer, Mo., 380 S.W. 2d 315; In re Patterson's Estate, Mo., 348 S.W.2d 6; Weber v. Jones, 240 Mo.App., 914, 222 S.W.2d 957. We hold that the form of the account was in conformity and compliance with Section 369.150, supra, and

Mrs. Baer is entitled to the benefit of the statutory presumption.

■ The question raised on this appeal is whether appellant presented substantial evidence that, in fact, no joint tenancy was intended or created, and therefore the trial court was in error in rendering judgment for defendant. We hold that appellant did not present substantial evidence to rebut or overcome the presumption that Mrs. Baer, as the surviving joint tenant, is the owner of the disputed account. Appellant in his brief cites only one case, Jenkins v. Meyer, supra. He urges that it is directly in point and decisive here. The Jenkins case also involved a dispute over ownership of certain deposit certificates in two banks and a building and loan association. The form of two of the five certificates was in compliance with the statute involved, but the other three were not. Amanda Berndt, age 87, died within about two years from the time the first certificates were issued. She had been declared an incompetent about eleven months before she died, leaving no known surviving relatives. The claimants were her estate and the named co-payees. Miss Berndt had a business agent who acted under her oral instructions and also a power of attorney executed by her. He testified that from the beginning she had instructed him that her money was to be invested "in her name and with provisions for payment at her death. But during her lifetime, she was to have *absolute control* and *ownership* over it and receive the income from it." (emphasis supplied). She wanted to retain control over her property and receive the income as long as she lived. Until she subsequently was adjudged an incompetent, she did so. The business agent made reports to her as to where and how her property was invested. There was no evidence that the named co-payees had any knowledge whatsoever, prior to her death, of the existence of the certificates or that they were named

as co-payees. She had received all the income, and it does not appear that the names of the co-payees were on any interest or dividend payment of income. The court correctly held that the estate had established by substantial evidence that no joint tenancy with right of survivorship was created or intended to be created as to any of the certificates. There are several significant differences between the facts of the Jenkins case and this case. There is no evidence that Miss Young during her lifetime instructed the Association or told anyone else that she was to have *absolute control* and *ownership* of the account or the income from it. It is clear that she was not on good terms with her relatives, and equally clear that she did change the named beneficiary on her insurance to Mrs. Baer. At about the same time she did create the account in statutory form for the benefit of Mrs. Baer. Although she was mentally competent and capable of making other dispositions of her insurance and the account, she kept them intact for years without change. It is also in evidence that Mrs. Baer was told by Miss Young of the account, including the amount thereof, and that her name was on the account. She also, on at least one occasion, had physical possession of the passbook for the account. The principles of law enunciated in the Jenkins case are applicable, but the factual differences cause us to reach a contrary result. The judgment of the trial court was for the right party.

After the trial and appeal Maude L. Baer died, and by order of this court Frank Knell, executor of the estate of Maude L. Baer, deceased, had been substituted as a party defendant and respondent in her stead.

The judgment is modified by substituting Frank Knell, executor of the estate of Maude L. Baer, deceased, as the defendant, and, as so modified, is affirmed.

All concur.